STATE OF NORTH CAROLINA v. TERRY LEE FORTNEY

No. 56

(Filed 15 August 1980)

1. **Constitutional Law § 65; Rape § 4.3– rape victim shield statute – constitutionality**

    The rape victim shield statute, G.S. 8-58.6, does not violate a rape defendant's constitutional right to confront the witnesses against him because it prevents him from automatically questioning the victim about her prior sexual experience since (1) there is no constitutional right to ask a witness questions that are irrelevant, (2) the statute is primarily procedural in its impact and application and does not alter any of the defendant's substantive rights, and (3) there are valid policy reasons, aside from questions of relevance, which support the statute.

2. **Rape § 4.3– rape victim shield statute – proper application to defendant**

    The rape victim shield statute, G.S. 8-58.6, was not unconstitutionally applied to defendant when the trial court excluded evidence that three different semen stains were found on clothing worn by an alleged rape victim since the inference raised by such evidence — that the victim had had sex with two persons other than defendant at some time prior to the sexual acts in question — was not probative of the victim's consent to those acts.

    Justice BROCK took no part in the consideration or decision of this case.

ON appeal as a matter of right from judgment of *Martin,* Judge, entered at the 27 July 1979 Session of Superior Court, WAKE County, imposing life sentence for conviction of first degree rape. Defendant's motion to bypass the Court of Appeals for review of convictions of kidnapping and crime against nature arising out of the same event was allowed 18 March 1980.

Our decision today addresses for the first time the question whether North Carolina's rape victim shield statute, G.S. 8-58.6, enacted by the 1977 Legislature, is constitutional. We also determine whether the statute was constitutionally applied to this defendant on the facts before us.

*Attorney General Rufus L. Edmisten, by Special Deputy Attorney General Thomas F. Moffitt, for the State.*

*J. Franklin Jackson for defendant-appellant.*

CARLTON, Justice.

## I.

The evidence tended to show that on 5 May 1979 Georgia Guthrie Shepard, a 23-year-old cocktail waitress, returned to her home in a Raleigh apartment complex after work at approximately 2:00 a.m. While still in the parking lot, she was accosted by a man armed with a gun who grabbed her and forced her to a sitting position between two cars with his arm around her neck. At his order, she stopped screaming, took off her clothes and walked to her car.

Once in the car, her assailant had oral sex with her against her will, then forced her to have intercourse. Finished, he drove her car to the end of the parking lot, stopped to talk to someone in a truck and then forced her into taking him into her apartment to make coffee for him.

Ms. Shepard and her assailant met an apparent mutual friend, a James Atkinson, on their way into the apartment. Atkinson entered the apartment with them and stayed while Ms. Shepard and the assailant played a game of backgammon. When Atkinson left, the assailant, still in control of his gun, again performed oral sex on Ms. Shepard and had intercourse with her against her will.

After the man left, Ms. Shepard waited in her darkened apartment until it was light and then ran to a woman friend's apartment. The friend called police. Ms. Shepard apparently never returned to the apartment to live.

Defendant's defense was consent.

Prior to trial, pursuant to G.S. 8-58.6(c), defendant moved for an *in camera* hearing to determine the admissibility of

certain evidence tending to show that Ms. Shepard had engaged in prior acts of sexual intercourse with third parties. At the *in camera* hearing defendant presented evidence that three different blood groupings of semen were found on clothing Ms. Shepard wore the night of the assault. Type B was found in her vagina, on her jeans and on her body suit, type O was found on her panties and panty hose and type A was found on her bathrobe. Testimony also indicated defendant's blood type was type B, while the victim's was type O.

When questioned closely by defense counsel about this discrepancy, Ms. Shepard testified that she had intercourse with her boyfriend a day and a half before the rape. On that day, Thursday, May 3, she was wearing the same underwear she wore the morning of the rape. She further testified she had not washed her bathrobe for at least a year and that her prior roommate, a sister, had worn it at times. She said she had not had intercourse with any man other than her boyfriend for the four years prior to the assault.

Defense counsel offered no evidence at the *in camera* hearing other than the different blood-typed semen stains.

The judge, at the conclusion of the *in camera* hearing, ruled that evidence of the type O and type A semen stains was inadmissible unless a State's witness "opened the door" while on the witness stand. The judge also ordered, however, that defense counsel could question Ms. Shepard at trial as to her sexual activity with third persons on the night of the crime. This defense consel apparently chose not to do.

During trial, another *in camera* examination was held on the judge's own motion at the time the State tendered the testimony of the expert serologist who had examined semen stains on the victim's clothing. At that time, the expert stated that while he determined positive results for three different blood groups when he tested Ms. Shepard's clothing "[it was] possible on the ones that were group 'O' that the group 'O' came from the victim." The judge thereupon reaffirmed the earlier order that the presence of secretions other than blood type B on the victim's clothes were irrelevant and inadmissible.

Defendant took the stand on his own behalf and denied ever raping Ms. Shepard, asserting that their contact was casual and consensual. He admitted having a gun but denied he ever took it out of the glove compartment of his truck.

The jury returned verdicts of guilty of first degree rape, kidnapping and crime against nature. Defendant appeals.

## II.

At issue in this case is the constitutionality of North Carolina's rape victim shield statute, G.S. 8-58.6. Defendant asserts this statute is unconstitutional both on its face and in its application to him. We disagree and find no error in the proceedings against him.

G.S. 8-58.6 provides in pertinent part:

*Restrictions on evidence in rape or sex offenses cases.* — (a) As used in this section, the term "sexual behavior" means sexual activity of the complainant other than the sexual act which is at issue in the indictment on trial.

(b) The sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior:

(1) Was between the complaint [sic] and the defendant; or

(2) Is evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant; or

(3) Is evidence of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented; or

(4) Is evidence of sexual behavior offered as the basis of expert psychological or psychiatric opinion that the complainant fantasized or invented the act or acts charged.

(c) No evidence of sexual behavior shall be introduced at any time during the trial of a charge of rape or any lesser included offense thereof or a sex offense or any lesser included offense thereof, nor shall any reference to any such behavior be made in the presence of the jury, unless and until the court has determined that such behavior is relevant under subsection (b). Before any questions pertaining to such evidence are asked of any witness, the proponent of such evidence shall first apply to the court for a determination of the relevance of the sexual behavior to which it relates. The proponent of such evidence may make application either prior to trial pursuant to G.S. 15A-952, or during the trial at the time when the proponent desired to introduce such evidence. When application is made, the court shall conduct an in-camera hearing, which shall be transcribed, to consider the proponent's offer of proof and the arguments of counsel, including any counsel for the complainant, to determine the extent to which such behavior is relevant. In the hearing, the proponent of the evidence shall establish the basis of admissibility of such evidence. If the court finds that the evidence is relevant, it shall enter an order stating that the evidence may be admitted and the nature of the questions which will be permitted. . . .

[1] Defendant argues that because this statute prevents him from automatically questioning a prosecuting witness about her prior sexual experience, his right to confront the witness against him has been compromised in violation of his constitutional rights.

Defendant is mistaken on several grounds. First, there is no constitutional right to ask a witness questions that are irrelevant. *People v. McKenna,* 196 Colo. 367, 585 P. 2d 275 (1978); *People v. Blackburn,* 56 Cal. App. 3d 685, 128 Cal. Rptr. 864 (1976); *People v. Thompson,* 76 Mich. App. 705, 257 N.W. 2d 268 (1977); *Smith v. Commonwealth,* 566 S.W. 2d 181 (Ky. App. 1978).

Second, in its impact and application, this statute is primarily procedural and does not alter any of defendant's substantive rights. And third, there are valid policy reasons, aside from relevance questions, which support this statute.

### III.

The sixth amendment of the Constitution, made applicable to state criminal proceedings by *Pointer v. Texas*, 380 U.S. 400, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965), guarantees the right of an accused in a criminal trial to be confronted with the witnesses against him. *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974). However, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process, *Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S. Ct. 1038, 1046, 35 L. Ed. 2d 297, 309 (1973), citing *Mancusi v. Stubbs*, 408 U.S. 204, 92 S. Ct. 2308, 33 L. Ed. 2d 293 (1972). *See also Davis v. Alaska, supra* at 321, 94 S. Ct. at 1112-13, 39 L. Ed. 2d at 356 (Stewart, J., concurring).

Thus, while a defendant may generally cross-examine to impugn the credibility of a witness, this right is not inviolate. Indeed the Supreme Court has expressly stated that a court has a duty to protect a witness "from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate him." *Alford v. United States*, 282 U.S. 687, 694, 51 S. Ct. 218, 220, 75 L. Ed. 624, 629 (1931) quoted in *Davis v. Alaska, supra* at 320, 94 S. Ct. at 1112, 39 L. Ed. 2d at 356. Implicit in this statement is the recognition that in such cross-examination, the probative value of any admission is outweighed by its prejudicial effect. The question of the proper scope of cross-examination, therefore, involves resolving the "tension between the right of confrontation and the State's policy of protecting the witness. . . . " *Davis v. Alaska, supra* at 314, 94 S. Ct. at 1109, 39 L. Ed. 2d at 352.

### A.

Prior to the enactment of G.S. 8-58.6, it was permissible in this jurisdiction to admit evidence of a prosecuting witness's

general reputation for unchastity in a rape trial both to attack her credibility as a witness and to show the likelihood of her consent. *State v. Banks,* 295 N.C. 399, 245 S.E. 2d 743 (1978); *State v. Goss,* 293 N.C. 147, 235 S.E. 2d 844 (1977); *State v. Grundler,* 251 N.C. 177, 111 S.E. 2d 1 (1959), *cert. denied,* 362 U.S. 917, 80 S. Ct. 670, 4 L. Ed. 2d 738 (1960).

Admissibility of such evidence, however, was bound by the normal test of relevance: evidence was admissible if it had any logical tendency to prove a fact in issue and its reception was neither forbidden by a specific rule of law, *State ex rel. Freeman v. Ponder,* 234 N.C. 294, 67 S.E. 2d 292 (1951), or of such weak probative force that it was outweighed by the likelihood of prejudice, *Pearce v. Barham,* 267 N.C. 707, 149 S.E. 2d 22 (1966); *Modern Electric Company, Inc. v. Dennis,* 259 N.C. 354, 359, 130 S.E. 2d 547, 550 (1963).

This Court's reluctance to apply blindly the *per se* rule that any previous sexual behavior of a rape victim is relevant was recognized in *State v. McLean,* 294 N.C. 623, 242 S.E. 2d 814 (1978). There, the defendant unsuccessfully attempted to show that the prosecuting witness voluntarily lived in an "environment of ... immorality." This Court affirmed the order of the trial judge denying admission. Justice Huskins, speaking for the Court, reasoned that "whether [the victim] lived in an 'environment of sexual immorality' or in a cloistered convent has no relevance to the issues in a case such as this" where consent was not argued. *Id.* at 632, 242 S.E. 2d at 820.

G.S. 8-58.6 is nothing more then than a codification of this jurisdiction's rule of relevance as that rule specifically applies to the past sexual behavior of rape victims. As such, the statute embodies a legislative recognition that decisions such as *State v. McLean, supra,* "[reject] the notion that all sexual behavior, however proved, has some intrinsic relevance in a sexual assault proceeding, and [require] a more specific showing of relevance before such behavior can be proved." Detailed Comments on Draft Law, Legislative Research Commission, *Report to the 1977 General Assembly of North Carolina: Sexual Assaults* 92 (1977).

State v. Fortney

Such a recognition results in a more logical and just trial both for the State and for the defendant than blind application of the former rule. The idea that *any* previous sexual behavior of a rape victim is *per se* relevant to a rape proceeding was based on two views of human behavior which no longer withstand the scrutiny of rational investigation.

First, evidence of a woman's sexual behavior with a third person is no longer considered by most legal and psychological authorities to be probative of her tendency to willingly consent to the embraces of her accused rapist. *See Annot.*, 94 A.L.R. 3d 257 (1979) and cases cited therein. Unlike the often quoted Judge Cowen in *People v. Abbot* who reasoned, "And will you not more readily infer assent in the practised Messalina, in loose attire, than in the reserved and virtuous Lucretia?" 19 Wend. 192, 195 (New York 1838), or the court in *Lee v. State*, 132 Tenn. 655, 658, 179 S.W. 145, 145 (1915) which stated, "[N]o impartial mind can resist the conclusion that a female who had been in a recent habit of illicit intercourse with others will not be so likely to resist as one who is spotless and pure," common sense and sociological surveys make clear that prior sexual experience by a woman with one man does not render her more likely to consent to intercourse with an often armed and frequently strange attacker. Indeed, one court has stated that belief in the probative value of such evidence on the issue of consent was "more a creature of a one-time male fantasy of the 'girls men date [or] the girls men marry' than one of logical inference." *People v. Blackburn, supra* at 690-91, 128 Cal. Rptr. 864, 867.

Weighed against the weak probative value of such evidence is the much more probable result of prejudice to the State's case when such evidence is admitted. The now classic Chicago Jury Study, originally published in 1966, suggested that jury prejudice operates against the prosecution in rape trials where the jury sees the prosecuting witness having "contributed" to her plight, including having had sexual experience out of marriage. H. Kalven, Jr., & H. Zeisel, *The American Jury*, 24951 (Phoenix ed. 1971). Although this study has been criticized as being out of date, *see* Tanford & Bocchino, *Rape Victim Shield Laws and the Sixth Amendment*, 128 U. Pa. L. Rev. 544 (1980), more recent evidence considered by the drafters of G.S. 8-58.6 suggests that

the tendency toward prejudice still applies to North Carolina juries when the victim has had prior sexual experience.[1]

Furthermore, introduction of such evidence tends to divert jury attention to collateral issues, State ex rel. *Pope v. Superior Court of County of Mohave*, 113 Ariz. 22, 545 P. 2d 946 (1976), and focuses jury deliberation on the private life of the victim, *see, e.g., McLean v. United States*, 377 A. 2d 74 (Dist. Col. 1977), rather than the guilt or innocence of the defendant. An example is *State v. Davis*, 291 N.C. 1, 229 S.E. 2d 285 (1976), where the defendant introduced evidence that the prosecuting witness's reputation for chastity in Charlotte was "bad," and contended that this evidence was probative of the woman's consent on the night of the alleged rape. In view of the fact that the prosecuting witness had moved to Charlotte from Atlanta less than a month prior to the incident to begin her first job and had spent all the intervening weekends at home in Atlanta, and in view of the fact that the defendant was apprehended by police in the very act of raping the victim, whose screams had alerted a neighbor, the fact that the State had to find and present rebuttal character witnesses to this reputation evidence was a totally unnecessary exploration of an issue collateral to the focus of the trial — the defendant's guilt or innocence. We think our Legislature intended G.S. 8-58.6 to prevent such abuses.

Indeed, not only have 46 other jurisdictions rejected the notion that evidence of sexual acts of the victim are *per se* probative of her consent, Tanford & Bocchino, *supra* at 544, these jurisdictions also no longer consider all evidence of sexual behavior as probative of a victim's credibility in general. *See People v. Thompson, supra;* Annot., 94 A.L.R. 3d, *supra* and cases cited therein.

---

[1]Drafters of the law had a report of a local study done by psychologists at N.C. State University indicating victim's prior sexual history had a strong impact on verdicts in a hypothetical fact situation otherwise the same. *Legislative Research Commission Report, supra* at 104. This substantiates a recent national survey of prosecutors which found that 74% believed a victim's previous sexual conduct had considerable impact in a jury trial (as opposed to "none," "slight," and "some"). National Institute of Law Enforcement and Criminal Justice, U.S. Department of Justice, *Forcible Rape: A National Survey of the Response by Prosecutors, Prosecutors Volume 1* 27 (1977).

This prior *per se* rule seems rooted in antiquity. Dean Wigmore questioned the emotional stability and, thus, the credibility of women making rape accusations. *Cf.* 3A J. Wigmore, *Evidence* § 924 at 736 (Chad. rev. 1970) (calling for medical examination of victim's emotions prior to prosecuting the accused). Many courts apparently extended this thinking to include the notion that unchaste women were especially prone to lying, *see, e.g.,* Berger, *Man's Trial, Woman's Tribulation: Rape Cases in the Courtroom,* 77 Colum. L. Rev. 1, 16 (1977) and cases cited therein, although some courts expressly held this inference did not extend to men. *Cf., State v. Sibley,* 131 Mo. 519, 532, 33 S.W. 167, 171 (1895) (unchastity which "destroys the standing" of women in "all the walks of life has no effect whatsoever on the standing for truth" of men). Common sense dictates the unreasonableness of this attitude. If sexual experiences outside marriage render one woman less truthful than her virgin sister, then sexual experience outside marriage would be an issue at any trial where a woman was a witness. This is plainly not the case. A woman, just as a man, "may be intemperate, incontinent, profane and addicted to many other vices that ruin the reputation, and yet retain a scrupulous regard for the truth. . . . " *Gilchrist v. McKee,* 4 Watts 380, 386 (Pa. 1835), quoted in *Commonweath v. Crider,* 240 Pa. Super. Ct. 403, 406, 361 A. 2d 352, 354 (1976).

### B.

This is not to say, however, that evidence of a victim's prior sexual behavior can never be relevant to an issue presented at trial. As we construe its language and permissible application, the rape victim shield law, G.S. 8-58.6, codifies primarily procedural rules and thus does not unduly impinge upon defendant's substantive right to confront his accusing witness. Unlike the situation in *Davis v. Alaska, supra,* where the defendant was totally prevented by an Alaskan witness protection law from cross-examining a witness against him about a fact that would give rise to a reasonable supposition of bias, and unlike the situation in *Chambers v. Mississippi, supra,* again where state law totally prevented a defendant from presenting evidence that another had confessed to the crime charged, G.S. 8-58.6 contains no such total prohibitions. Thus, although statu-

tory, the rape victim shield law is analogous to judge-made rules of evidence which prevent the admission of opinion evidence, hearsay testimony and convictions of very old standing where the probative value of the evidence is outweighed by the possibility of jury prejudice. No one seriously considers that the policy decision not to admit such analogous evidence is on its face a violation of the fifth or sixth amendments. We see no difference in the impact of G.S. 8-58.6. The statute's exceptions provide ample safeguards to insure that relevant evidence is not excluded. G.S. 8-58.6(b)(2) specifically provides: "(b) The sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior: ... (2) Is evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant. ... " This exception is clearly intended, *inter alia,* to allow evidence showing the source of sperm, injuries or pregnancy to be someone or something other than the defendant. *See generally,* Tanford & Bocchino, *supra* at 553.[2]

Likewise, G.S. 8-58.6(b)(3) preserves an accused defendant's substantive rights when it provides that a victim's sexual history is admissible if it

> (3) Is evidence of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant resonably to believe that the complainant consented
> ....

This includes evidence which indicates that a victim's pattern of behavior gives rise to the strong inference of consent within the facts of a given situation.

---

[2]We note that the original draft of the rape victim shield law expressly provided for the admission of evidence that showed "an origin of semen other than the alleged defendant." *Legislative Research Commission Report, supra* at 57. This language was apparently broadened in the law as enacted.

G.S. 8-58.6(b)(1) provides that any evidence of prior sexual behavior between a complainant and a defendant is admissible and G.S. 8-58.6(b)(4) provides that sexual behavior offered as the basis of an expert psychiatric opinion that complainant fantasized or invented the acts is admissible. All of these exceptions define those times when the prior sexual behavior of a complainant *is* relevant to issues raised in a rape trial, and are not a revolutionary move to exclude evidence generally considered relevant in trials of other crimes.

Nor does the statute stop with definitions. If any question arises concerning evidence of a victim's prior sexual history, that question may be presented at an *in camera* hearing where opposing counsel may present evidence, cross-examine witnesses and generally attempt to discern the relevance of proffered testimony in the crucible of an adversarial proceeding away from the jury. In summary, then, G.S. 8-58.6 merely contains and channels long-held tenets of relevance by providing a statutory definition of that relevance and by providing a procedure to test that definition within the context of any particular case. Defendant's substantive right to cross-examine is not impermissibly compromised.

C.

Finally the State has legitimate policy reasons, aside from questions of relevance, which support the permissibility of G.S. 8-58.6. Rape is one of the most underreported of crimes. Estimates are that from 3½, *President's Commission on Law Enforcement and Administration of Justice, The Challenges of Crimes in a Free Society* 21-22 (1967) to 20, Berger, *supra* at 5, times the number of rapes reported actually occur. Only 60% of those arrested are charged and conviction rates for those charged are low compared to other crimes, Berger, *supra* at 6 (35% for rape as compared to 70% for other crimes). *See also* National Institute of Law Enforcement, U.S. Department of Justice, *Forcible Rape: An Analysis of Legal Issues* 3 (1978) (3% of 635 rape complaints in the sample resulted in convictions of rape or some lesser crime). Part of the reluctance of victims to report and prosecute rape stems from their feeling that the legal system harasses and humiliates them. National Institute

State v. Fortney

of Law Enforcement, U.S. Department of Justice, *Forcible Rape: Final Project Report* 15 (1978). We think the drafters of G.S. 8-58.6 knew this and framed the law accordingly. *Detailed Comments to Draft Law, supra.* In so doing, the Legislature did not unduly infringe on defendant's constitutional rights. As noted above, the U.S. Supreme Court has held that the right to confront the witnesses against one does not extend to unnecessary witness harassment and humiliation. *Alford v. United States, supra.* G.S. 8-58.6 merely codifies this stance.

## IV.

**[2]** Defendant, however, argues that the portion of the statute *as applied to him,* G.S. 8-58.6(b)(3), is unconstitutional. In this, he relies on little more than his original argument that the statute is unconstitutional.

Defendant presented no testimony at either of the *in camera* hearings held on this point that indicated that the victim's sexual *behavior* on past occasions conformed to the defendant's version of the facts in this event. If the defendant had shown that the victim commonly accosted strangers in parking lots seeking sexual partners or that she often met men in apartment parking lots and took them to her car for sexual congress, then clearly the relevance of such evidence is established under the statute and would have been admissible.

Here, however, defendant made no attempt to present evidence of the victim's *behavior* and instead only offered the evidence that three different semen stains were found on clothing the victim had worn. Such evidence is not probative of the victim's consent to the acts complained of. Indeed, the only inference such evidence raises is that the victim had had sex with two individuals other than the defendant at some time prior to the night of the rape.[3] Without a showing of more, this is

---

[3]Even this inference is weak. The serologist testified that the blood type O he obtained from the victim's panty hose and pants could have been an artifact of victim's own blood type. Blood type A, found only on her bathrobe, could, by the victim's testimony, have come from a friend of her sister who had borrowed the robe. The only semen obtained from the victim's vagina was type B which was defendant's blood type.

precisely the kind of evidence the statute was designed to keep out because it is irrelevant and tends to prejudice the jury, while causing social harm by discouraging rape victims from reporting and prosecuting the crime.

Naked inferences of prior sexual activity by a rape victim with third persons, without more, are irrelevant to the defense of consent in a rape trial. G.S. 8-58.6 merely codifies this rule, and is constitutional both on its face and in its application to the facts *sub judice.*

In the defendant's trial, therefore, we find

No error.

Justice BROCK took no part in the consideration or decision of this case.