STATE OF NORTH CAROLINA v. CARL PAUL BARON, II

No. 8117SC1290

(Filed 6 July 1982)

1. **Rape and Allied Offenses § 4.3— rape victim shield statute—false accusations against others**

     In a prosecution for second degree rape and incest, the rape victim shield statute, G.S. 8-58.6, did not preclude evidence that the prosecutrix on previous occasions had falsely accused others of improper sexual advances.

2. **Rape and Allied Offenses § 4— use of tampons by prosecutrix**

     In a prosecution for second degree rape of and incest with defendant's thirteen-year-old daughter, evidence concerning the complainant's prior use of tampons was admissible to provide an alternative explanation for the opening in her hymen.

APPEAL by defendant from *Washington, Judge*. Judgment entered 19 May 1981 in Superior Court, SURRY County. Heard in the Court of Appeals 24 May 1982.

The defendant, Carl Paul Baron, II, was convicted of two counts of second degree rape and two counts of incest and was given a fifteen to twenty-year active sentence for the rape and incest that allegedly occurred on 7 January 1981, to be followed by another fifteen to twenty-year prison sentence for the rape and incest which allegedly occurred on 17 December 1980.

*Attorney General Edmisten, by Assistant Attorney General Daniel C. Oakley, for the State.*

*Franklin Smith for defendant appellant.*

BECTON, Judge.

I

The State's evidence tended to show that the defendant engaged in sexual relations with his thirteen-year-old daughter on 17 December 1980 and again on 7 January 1981. On 12 January 1981, the complainant went to the home of her grandmother and telephoned Jean Kidd, a protective service worker for the Surry County Department of Social Services. Ms. Kidd contacted the Surry County Sheriff's Department, and statutory rape and felonious incest charges were filed.

The physical examination of the complainant conducted on 12 January 1981 revealed no bruising or tearing of the genital or rectal area and no sperms within the vagina. The examination did reveal an opening in the hymen, however. Further, a pubic hair was removed from the complainant's genital area. A State Bureau of Investigation (SBI) laboratory analysis revealed that the hair did not belong to the complainant and did not belong to the defendant.

The defendant, testifying in his own behalf, denied the allegations of rape and incest. The three other children of the defendant testified that they were present on the night of 17 December 1980 and that the incident alleged by the complainant did not occur. They also testified that nothing extraordinary happened on 7 January 1981.

Evidence heard in the absence of the jury revealed that the complainant had accused a foster-parent of coming into her bedroom in the nude, and a neighbor of improper sexual advances. Evidence heard in the absence of the jury suggested further that the complainant had accused her older brother of improper sexual advances and had once painted pubic hairs on a three-year-old child.

## II

[1] The dispositive issue on appeal is whether the North Carolina Rape Victim Shield Statute precludes evidence that the complainant, on previous occasions, falsely accused others of improper sexual advances.

Prior to trial, an in-camera hearing was held to determine the admissibility of certain statements made by the complainant. Defense attorneys sought, first, to cross examine the complainant about similar accusations she made against a foster-parent, her brother, and a neighbor; and second, to introduce the testimony of one or more of those persons who would deny the accusations. The trial court ruled this evidence inadmissible under the Rape Victim Shield Statute, G.S. 8-58.6.

G.S. 8-58.6 in pertinent part reads:

*Restrictions on evidence in rape or sex offenses cases. —* (a) As used in this section, the term "sexual behavior" means sexual activity of the complainant other than the sexual act which is at issue in the indictment on trial.

(b) The sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior:

(1) Was between the complaint [sic] and the defendant; or

(2) Is evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant; or

(3) Is evidence of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented; or

(4) Is evidence of sexual behavior offered as the basis of expert psychological or psychiatric opinion that the complainant fantasized or invented the act or acts charged.

The trial court interpreted "sexual behavior" to include prior ac-
cusations made by the complainant and determined that the
evidence sought to be elicited should have been excluded in the
absence of "expert psychological or psychiatric opinion that
the complainant fantasized or invented the act or acts charged."
G.S. 8-58.6(b)(4). We disagree.

The Rape Victim Shield Statute is "nothing more . . . than a
codification of this jurisdiction's rule of relevance as that rule
specifically applies to the past sexual behavior of rape victims."
*State v. Fortney*, 301 N.C. 31, 37, 269 S.E. 2d 110, 113 (1980). The
exceptions, G.S. 8-58.6(b) (1)-(4), merely "define those times when
the prior sexual behavior of the complainant *is* relevant to issues
raised in a rape trial. . . ." *Id.* at 42, 269 S.E. 2d at 116. The
statute clearly was not designed to preclude the admission of all
evidence relating to sex. The statute specifically defines sexual
behavior as "sexual activity of the complainant other than the
sexual act which is at issue in the indictment on trial." G.S.
8-58.6(a). The statute further provides for an in-camera hearing at
which time "opposing counsel may present evidence, cross ex-
amine witnesses, and generally attempt to discern the relevance
of proffered testimony in the crucible of an adversarial pro-
ceeding away from the jury." 301 N.C. at 42, 269 S.E. 2d at 116.
Again, except when the exceptions are applicable, the statute
declares as irrelevant the sexual history of rape victims. It does
not exclude otherwise admissible evidence.

In this case, defense counsel made no representation that the
complainant had engaged in previous sexual activities. Defense
counsel sought only to introduce evidence of the prior allegedly
false statements for impeachment purposes and advised the court
of their intent. We believe that the Legislature intended to ex-
clude the actual sexual history of the complainant, not prior ac-
cusations of the complainant. We reached a similar result in *State
v. Smith*, 45 N.C. App. 501, 263 S.E. 2d 371, *disc. rev. denied*, 301
N.C. 104, --- S.E. 2d --- (1980), in which we concluded that
language or conversation does not constitute sexual behavior.
Specifically, we said: "While the topic of conversation may have
been sexual in nature, there is no evidence presented in this case
to indicate that the speech arose to the level of sexual behavior
or activity. . . ." *Id.* at 503, 263 S.E. 2d at 372. In *Smith*, as in

this case, defense counsel should have been allowed to introduce the evidence in order to attack the credibility of the witness.

Since there is no contention that the complainant ever engaged in sexual activity, there was no need to invoke the statute to prevent the disclosure of complainant's prior statements accusing others of improper sexual advances. "The primary purpose of impeachment is to reduce or discount the credibility of a witness for the purpose of inducing the jury to give less weight to [her] testimony in arriving at the ultimate facts in the case." *State v. Nelson*, 200 N.C. 69, 72, 156 S.E. 154, 156 (1930). The Rape Victim Shield Statute was applied in this case to prevent defendant from attacking the complainant's veracity. Thus, one of the main functions of cross examination was defeated.

Because we grant defendant a new trial based on the trial court's erroneous application of the Rape Victim Shield Statute to the facts of this case, it is not necessary to address two of defendant's three remaining assignments of error. We do address one issue, however, since it is likely to arise at the retrial.

## III

[2] The defendant sought to introduce evidence concerning the complainant's prior use of tampons in order to provide an alternative explanation for the opening in her hymen. Because defendant denied having sexual intercourse with the complainant and because the physical examination revealed no bruising or lacerations of the skin of the genital or rectal area, defendant contends that the "tampon evidence" was especially critical. The defendant's wife (the stepmother of the complainant) testified that the complainant tried to insert a tampon prior to the alleged rape and experienced much pain. Because a jury may view this evidence as consistent with the puncturing of the hymen and consistent with the physical examination which revealed "no recent tears or recent change in her hymen," this evidence should not have been excluded. "Relevancy describes the relationship between a proffered item of evidence and a proposition which is provable or material in a given case." *United States v. Craft*, 407 F. 2d 1065, 1069 (6th Cir. 1969). *See generally* 1 Stansbury, North Carolina Evidence §§ 77-79 (Brandis rev. 1973); McCormick on Evidence § 185 (2d ed. 1972). We believe the jurors, considering

the guilt or innocence of the defendant, should have had access to this evidence in considering whether the alleged offense occurred.

For the foregoing reasons, defendant should be granted a

New trial.

Chief Judge MORRIS and Judge MARTIN (Robert M.) concur.