TYSON, Judge.
 

 *529
 
 Clairy Kanyinda Mbaya ("Defendant") appeals from judgment entered after a jury convicted him of statutory rape, statutory sex offense, and taking indecent liberties with a child. We find no error.
 

 I. Factual Background
 

 In February 2014, A.B. was living with her mother, her two younger siblings, and Defendant. Defendant was A.B.'s mother's boyfriend and
 
 *530
 
 had been living in the apartment since 2013. A.B. was fifteen years old at the time the incidents occurred.
 

 On the afternoon of 21 February 2014, A.B. returned home after school, ate, and went to sleep in her room. No one else was home because A.B.'s mother was pregnant and having contractions. Defendant, who was the newly arriving baby's father, drove A.B.'s mother to the hospital around 3 p.m. that afternoon. Defendant drove the work vehicle assigned to him by his employer, a chauffeured vehicle transportation company.
 

 A.B.'s mother had arranged for A.B.'s two younger siblings to stay with other relatives, and for A.B. to stay with A.B.'s father while she was in the hospital. A.B.'s father planned to pick A.B. up after he left work that day.
 

 A.B. testified at trial she woke up at approximately 8:10 p.m. and heard her bedroom door open and close. A few minutes later, she heard her door open again and saw a man walk into the room. A.B. testified the man was dressed in black, wore a mask that covered facial features, except his eyes, his nose, and dreadlocks, and that he carried a gun. A.B. did not recognize the man at first.
 

 A.B. testified that the man said he would not hurt her, but told her to remove her clothes. He performed oral sex on her and told her to do the same to him. When A.B. refused, he had her rub his penis with her hands. Then, he pushed her on the bed, kissed the side of her face and neck, and raped her. Next, Defendant told her to get on "all fours" and raped her again. At that point, the man turned on the light and A.B. recognized him as Defendant. She recognized his eyes, nose, and dreadlocks and that he spoke with the same African accent as Defendant.
 

 As these incidents occurred, A.B. cried and asked Defendant to stop and leave. Defendant did not stop until A.B.'s father knocked on the door to pick her up around 9:20 p.m. A.B. yelled for her father to hold on. Defendant made A.B. get onto her knees and told her that he was going to ejaculate on her face. Instead, he ejaculated on her chest. A.B. wiped herself off with a pair of sweatpants, dressed, and walked to the front door. Defendant followed her to the door and told her not to say anything or he would kill her.
 

 A.B. left the apartment and walked over to her father, who was standing by his vehicle. A.B.'s father noticed that A.B. was upset and asked her what was wrong. A.B. replied she had just broken up with her boyfriend, because she was scared that Defendant would kill her or her father. A.B.'s father did not believe her and pressed the matter further. A.B. told her father she had just been raped.
 

 *531
 
 A.B.'s father immediately returned to the apartment, but no one was there. They traveled to a nearby relative's house and called the police. An ambulance took A.B. to the hospital where she was examined, gave statements to officers and a nurse describing what happened, and evidence was collected with a rape kit.
 

 *268
 
 Defendant was at the hospital when the baby was born, which was at approximately 12:00 a.m. on 22 February 2014. Shortly thereafter, Defendant was first questioned by detectives concerning his whereabouts at the time of the offenses. Defendant stated he stayed with A.B.'s mother at the hospital for several hours and left around 7:30 p.m. to pick up a friend at a hotel and go to Wal-Mart to buy paint. Detectives did not question Defendant further at the hospital, but arranged for him to come to the Law Enforcement Center the next day on Saturday, 22 February 2014.
 

 On Saturday, Defendant dropped off his work vehicle at his employer's office. Although scheduled to work on Sunday, Defendant did not arrive for his shift. Defendant also failed to show up for his appointment at the Law Enforcement Center on Saturday. He was contacted by a detective and agreed to come in later that day but failed to appear. A detective called Defendant again, but he did not answer his cell phone or respond to the messages left by the detective.
 

 While Defendant was missing, detectives learned that Defendant's employer had a Global Positioning System ("GPS") device installed on his work vehicle that tracked the location of the vehicle. The GPS records indicated the vehicle was not driven to a hotel or to a Wal-Mart after Defendant left the hospital on Friday 21 February 2014 and during the time the offenses occurred.
 

 Rather, GPS records kept by Defendant's employer show the vehicle was driven away from the hospital around 7:30 p.m., arrived at Pitts Drive at 7:47 p.m., left Pitts Drive at 9:27 p.m., and returned to the hospital at 9:37 p.m. Pitts Drive is near A.B.'s mother's apartment and is the same street where the vehicle was located before Defendant drove A.B.'s to the hospital earlier that day. Arrest warrants were issued on 24 February 2014. Defendant was arrested on 5 March 2014. Prior to being arrested, Defendant cut off his dreadlocks.
 

 Detectives interviewed Defendant on 28 May 2014 and the interview was recorded and transcribed. Defendant told detectives, again, after he left the hospital, he picked up his friend from a hotel and went to Wal-Mart. He then dropped off his friend at the hotel on Sugar Creek Road and returned to the hospital. Defendant said he did not go anywhere
 
 *532
 
 else, he had driven his work vehicle, and that no one else drove it that day.
 

 At this point in the questioning, detectives informed Defendant that the GPS tracking records for his work vehicle conflicted with his account of his whereabouts that night. Defendant admitted he returned to the apartment to get food, shoes, and to check the places he was supposed to paint. Although A.B.'s mother had given Defendant her key to the apartment, Defendant said he had knocked on the apartment door before entering and nobody answered. Once inside, he stated that he knocked on the inside doors that were not open and nobody was there. Later on in the interview, he admitted that when he opened A.B.'s bedroom door and looked in, he saw her asleep inside. He said he closed the door and never went back.
 

 Forensic experts at the Charlotte-Mecklenburg Police Department's crime laboratory examined swabs and smears collected from A.B. at the hospital and a buccal swab taken from Defendant after his arrest. Sperm fractions were produced from the swabs and specimens taken from A.B.'s vagina, anus, external genitalia, and chest. Tests on the swabs from A.B.'s anus, external genitalia, and chest showed the presence of DNA matching Defendant's DNA profile. DNA found on the swab taken from A.B.'s neck also matched Defendant's DNA profile.
 

 A. Pre-Trial Hearing
 

 On 17 August 2015, at the beginning of the trial, the State filed a motion to enforce Rule 412, the Rape Shield Statute, to prevent Defendant from presenting any irrelevant evidence of A.B.'s other sexual activity.
 
 See
 
 N.C. Gen. Stat. § 8C-1, Rule 412 (2015). The State sought an order for Defendant and his counsel to "refrain from eliciting, proffering, or attempting to elicit or proffer any testimony or evidence regarding the sexual behavior of the minor child, from her or any other witness that testifies." The trial court cleared the courtroom to hear each party's arguments on the State's motion and the evidence Defendant intended to introduce regarding
 
 *269
 
 A.B.'s sexual history in response to the motion.
 

 Defendant's counsel stated Defendant would present alibi evidence, and wanted to show A.B. was sexually active as evidence of the guilt of another perpetrator. He planned to elicit this testimony from A.B., her mother, and her father. The prosecutor informed the court that information obtained in discovery indicated A.B. was a sexually active teenager, and that she had last engaged in sex in December, a couple of months prior to the rape and sexual offenses on 21 February 2014.
 

 *533
 
 Defendant's counsel argued in reply that for the court to allow the State's Rule 412 motion to exclude evidence would be unconstitutional and deny him the opportunity to present a complete defense. He asserted Defendant would be prevented from "presenting the evidence that others could have committed this crime." Counsel conceded the evidence only showed A.B. last had sexual intercourse in December prior to the February incidents, but asserted "a jury might infer that that was not an honest statement." Defendant's counsel noted "[A.B.'s] credibility is a key factor" in this case as she was "the only person who was at home at the time and has made the allegation of the conduct."
 

 Notwithstanding Defendant's argument, the only evidence Defendant sought to introduce at that time was that A.B. had previously been sexually active. He did not offer any proposed evidence linking the sexual conduct to another possible perpetrator, or any other issue in the case, as is shown in the following exchange with the trial judge:
 

 THE COURT: I'm not sure, other than the fact that she was purportedly sexually active, what you're seeking to introduce.
 

 MR. LOVEN: Nothing your honor.
 

 THE COURT: Just that she was sexually active?
 

 MR. LOVEN: Yes, Your Honor.
 

 The trial court granted the State's Rule 412 motion and excluded the evidence. The trial court also found, "aside from the Rule 412 analysis, ... additionally the dangers of prejudice arising from testimony regarding a teenager being sexually active far outweigh any probative value."
 
 See
 
 N.C. Gen. Stat. § 8C-1, Rule 403.
 

 B.
 
 Voir Dire
 
 of Complainant
 

 Following A.B.'s testimony, Defendant obtained information in a
 
 voir dire
 
 hearing indicating that A.B. had been sexually active prior to the date of the alleged rape and sex offenses, but she had not engaged in sexual intercourse since December and the sexual activity in December was consensual. Although her parents were not aware of the sexual activity in December, they were aware that she had been sexually active in the past.
 

 When questioned about her parents' reaction to learning she was sexually active, A.B. stated she had been punished, but not seriously. Rather, "it was more of something that [she] just had to think about and
 
 *534
 
 realize the choices that [she] made rather than [her] parents actually punishing [her]." A.B. testified she was not concerned about consequences she would receive for such conduct or for telling her parents about future sexual conduct.
 

 At the conclusion of the cross-examination, Defendant moved that evidence of A.B.'s past sexual activity and parental punishment be allowed for the purpose of showing she possessed a motive to fabricate the charges against Defendant. The State argued such evidence was irrelevant under Rule 412 and was not admissible for a proper reason.
 

 In addition, the State argued evidence tending to show a teenager had engaged in sexual activity, and her parents were unhappy with her, does not show she would fabricate allegations of rape and sexual assaults. After considering the testimony, the trial court stated, "[m]y ruling with regard to the motion will remain that the defense is prohibited, pursuant to 412, from questioning the victim concerning prior sexual activity."
 

 C.
 
 Voir Dire
 
 of Complainant's Parents
 

 Following the testimony of A.B.'s father, Defendant questioned him about A.B.'s sexual activity in a
 
 voir dire
 
 hearing. A.B.'s father testified that he was aware that she had been sexually active and had a boyfriend. A.B.'s father discussed the risks of sexual activity with A.B., but he did not recall imposing any particular punishment. He stated
 
 *270
 
 he probably told her he "would deny her some privileges if she kept doing it."
 

 A.B.'s mother testified during
 
 voir dire
 
 cross-examination that she first learned A.B. was sexually active several years before the alleged rape occurred. Like A.B.'s father, A.B.'s mother testified she had talked about the implications of having sexual intercourse and had previously punished A.B. by taking away her cell phone. A.B.'s mother believed A.B. was still sexually active, but was not surprised because, as she testified, "I was young once before, and I know." A.B.'s mother also noted A.B. was not permitted to have her boyfriend at the house when an adult was not present.
 

 Following each testimony, Defendant's counsel requested the testimony be presented to the jury to show that A.B. had motive and opportunity to lie about the rape and sexual offenses. Both times, the trial court indicated its previous Rule 412 ruling would not change and denied Defendant's request to admit the evidence.
 

 The jury convicted Defendant of statutory rape, statutory sex offense, and taking indecent liberties with a child. The jury also found
 
 *535
 
 Defendant had taken advantage of a position of trust and confidence at the time of the crime as an aggravating factor.
 

 Defendant was sentenced to a minimum of 300 months and a maximum of 420 months for the statutory rape conviction. The indecent liberties and statutory sex offense convictions were consolidated and Defendant was sentenced to a consecutive term of imprisonment for a minimum of 300 months and a maximum of 420 months. Defendant was also ordered to register as a sex offender for life and enroll in lifetime satellite based monitoring upon release. Defendant appeals.
 

 II. Issues
 

 Defendant argues the trial court erred by ruling North Carolina Rule of Evidence 412 barred him from presenting evidence during cross-examination of A.B.'s past sexual activity, which resulted in punishment by her parents. Defendant argues: (1) the evidence was relevant to show A.B. had a motive to fabricate a claim of being raped, and (2) the exclusion of the evidence violated his constitutional right to present a complete defense.
 

 III. Standard of Review
 

 The Rape Shield Statute is "a codification of this jurisdiction's rule of relevance as that rule specifically applies to the past sexual behavior of rape victims. The exceptions ... merely define those times when the prior sexual behavior of the complainant is relevant to issues raised in a rape trial."
 
 State v. Khouri
 
 ,
 
 214 N.C.App. 389
 
 , 405-06,
 
 716 S.E.2d 1
 
 , 12 (2011) (quoting
 
 State v. Baron,
 

 58 N.C.App. 150
 
 , 153,
 
 292 S.E.2d 741
 
 , 743 (1982) (internal quotation marks and citations omitted)),
 
 disc. review denied
 
 ,
 
 365 N.C. 546
 
 ,
 
 742 S.E.2d 176
 
 (2012) ;
 
 see
 
 N.C. Gen. Stat. § 8C-1, Rule 412.
 

 "A trial court's ruling on relevant evidence is not discretionary and therefore is not reviewed under the abuse of discretion standard."
 
 State v. Moctezuma,
 

 141 N.C.App. 90
 
 , 94,
 
 539 S.E.2d 52
 
 , 55 (2000) (citations omitted).
 

 Although the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal. Because the trial court is better situated to evaluate whether a particular piece of evidence tends to make the existence of a fact of consequence more or less probable, the appropriate standard of review for a trial court's ruling
 
 *536
 
 on relevancy pursuant to Rule 401 is not as deferential as the 'abuse of discretion' standard which applies to rulings made pursuant to Rule 403.
 

 Khouri,
 

 214 N.C.App. at 406
 
 ,
 
 716 S.E.2d at 12-13
 
 (citation omitted).
 

 This Court also held that "the same deferential standard of review should apply to the trial court's determination of admissibility under Rule 412."
 
 Id
 
 .
 

 We review
 
 de novo
 
 a defendant's arguments that his constitutional rights were violated.
 
 State v. Graham
 
 ,
 
 200 N.C.App. 204
 
 , 214,
 
 683 S.E.2d 437
 
 , 444 (2009),
 
 appeal dismissed and disc. review denied
 
 ,
 
 363 N.C. 857
 
 ,
 
 694 S.E.2d 766
 
 (2010).
 

 *271
 

 IV. Analysis
 

 A. Rape Shield Statute
 

 Defendant argues that the trial court erred in excluding A.B.'s past sexual activity. We disagree.
 

 The Rape Shield Statute states that evidence regarding the sexual activity of the complainant, other than the sexual act at issue, "is irrelevant to any issue in the prosecution," unless it falls within one of four categories. N.C. Gen. Stat. § 8C-1, Rule 412(a) and (b). Prior to asking questions concerning a complainant's other sexual activity, the proponent must first make an offer of proof to allow the trial court to determine the admissibility of the evidence. N.C. Gen. Stat. § 8C-1, Rule 412. This proffer must occur at a transcribed
 
 in camera
 
 hearing before any mention of the complainant's other sexual activity is to be made in the presence of a jury.
 

 Id.
 

 The purpose of the statute is "to protect the witness from unnecessary humiliation and embarrassment while shielding the jury from unwanted prejudice that might result from evidence of sexual conduct which has
 
 little relevance to the case and has a low probative value.
 
 "
 
 State v. Younger,
 

 306 N.C. 692
 
 , 696,
 
 295 S.E.2d 453
 
 , 456 (1982) (emphasis supplied).
 

 Our Supreme Court noted the Rape Shield Statute: "define[s] those times when [other] sexual behavior of the complainant is relevant to issues raised in a rape trial and
 
 [is] not a revolutionary move to exclude evidence generally considered relevant in trials of other crimes
 
 ."
 
 State v. Fortney
 
 ,
 
 301 N.C. 31
 
 , 42,
 
 269 S.E.2d 110
 
 , 116 (1980) (emphasis supplied). As such, the four exceptions in the Rape Shield Statute are not
 
 *537
 
 "the sole gauge for determining whether evidence is admissible in rape cases."
 
 Younger
 
 ,
 
 306 N.C. at 698
 
 ,
 
 295 S.E.2d at 456
 
 .
 

 This Court recently held "there may be circumstances where evidence which touches on the sexual behavior of the complainant may be admissible even though it does not fall within one of the categories in the Rape Shield Statute."
 
 State v. Martin
 
 , --- N.C.App. ----, ----,
 
 774 S.E.2d 330
 
 , 336-37 (citing
 
 State v. Edmonds,
 

 212 N.C.App. 575
 
 , 580,
 
 713 S.E.2d 111
 
 , 116 (2011) (noting "[t]he lack of a specific basis under [the Rape Shield Statute] for admission of evidence does not end our analysis")),
 
 disc. review denied
 
 , --- N.C. ----,
 
 775 S.E.2d 844
 
 (2015);
 
 see e.g.
 
 ,
 
 State v. Rorie
 
 , --- N.C.App. ----, ----,
 
 776 S.E.2d 338
 
 , 344 (2015) ("[E]vidence that [the victim] was discovered watching a pornographic video, without anything more, is not evidence of sexual activity barred by the Rape Shield Statute."),
 
 disc. review denied
 
 , --- N.C. ----,
 
 784 S.E.2d 482
 
 (2016).
 

 In
 
 Martin
 
 , the defendant, a high school substitute teacher, was accused of sexually assaulting a female student.
 
 Id
 
 . at ----,
 
 774 S.E.2d at 331
 
 . The female student testified the defendant walked into the boy's locker room, saw she was standing and talking with two football players, told the boys to leave, and then demanded that she perform oral sex on him.
 

 Id.
 

 at ----,
 
 774 S.E.2d at 331-32
 
 .
 

 At trial, the defendant sought to introduce testimony from himself and two other witnesses to show the female student was
 
 in flagrante delicto
 
 performing oral sex upon the football players when the defendant entered the locker room.
 

 Id.
 

 at ----,
 
 774 S.E.2d at 332
 
 . The defendant argued evidence was necessary to show the student had a reason to fabricate her accusations against the defendant, and to cover up her true actions.
 

 Id.
 

 This Court concluded if the State's evidence is "based largely on the credibility of the prosecuting witness, evidence tending to show that the witness had a motive to falsely accuse the defendant is certainly relevant" and "motive or bias of the prosecuting witness is an issue that is common to criminal prosecutions in general and is not specific to only those crimes involving a type of sexual assault."
 
 Id
 
 . at ----,
 
 774 S.E.2d at 336
 
 . Rather, in that case:
 

 [T]he trial court should have looked beyond the four categories to determine whether the evidence was, in fact, relevant to show [complainant's] motive to falsely accuse Defendant and, if so, conducted a balancing test of the probative and prejudicial value of the evidence under
 
 *538
 
 Rule 403 or was otherwise inadmissible on some other basis (e.g., hearsay).
 
 See
 

 *272
 

 State v. Edmonds
 
 ,
 
 212 N.C.App. at 578
 
 ,
 
 713 S.E.2d at 115
 
 (quoting N.C. Gen. Stat. § 8C-1, Rule 403 (2009) ).
 

 Id
 
 .
 

 Soon after our decision in
 
 Martin
 
 , this Court considered a similar case that it deemed to be "indistinguishable from
 
 Martin
 
 in any meaningful way."
 
 State v. Goins
 
 , --- N.C.App. ----, ----,
 
 781 S.E.2d 45
 
 , 61 (2015). The Court held statements by complainant made to police that he was addicted to pornography, had an extramarital affair, and could not control his behavior because of what the defendant had done to him were relevant to show that complainant had a motive to fabricate allegations against the defendant.
 

 Id.
 

 Like
 
 Martin
 
 , the charges in
 
 Goins
 
 were based largely upon the credibility of the complainant's testimony and the defendant sought to introduce evidence tending to show the complainant's motive to falsely accuse.
 
 Id
 
 . Also important to the Court was that the defendant "did not seek to cross-examine a prosecuting witness about his or her general sexual history. Instead, [d]efendant had identified specific pieces of evidence that could show [the complainant] had a reason to fabricate his allegations against [d]efendant."
 
 Id
 
 . (citations omitted). Upon review, this Court held that it was improper for the trial court to exclude the testimony under Rule 412 and Rule 401.
 
 Id
 
 . Defendant relies on this Court's decisions in
 
 Martin
 
 and
 
 Goins
 
 to support his argument.
 

 The facts of this case are readily distinguishable from those cases. Defendant does not contend A.B.'s past sexual activity was admissible under one of the four categories in N.C. Gen. Stat. § 8C-1, Rule 412(b). Rather, he asserts A.B.'s past sexual activity and parental punishment for such activity is relevant to show that she had a motive to fabricate the accusations against Defendant.
 

 Unlike
 
 Martin
 
 , Defendant proposed evidence about occurrences which were not close in time and proximity to the alleged crime.
 
 See
 

 Martin,
 
 --- N.C.App. at ----,
 
 774 S.E.2d at
 
 331-32 ;
 
 see
 

 Edmonds,
 

 212 N.C.App. at 581-82
 
 ,
 
 713 S.E.2d 111
 
 , 117 (holding the trial court did not err by refusing to admit "some distant sexual encounter which has no relevance to this case other than showing that the witness [was] sexually active" (quoting
 
 Younger
 
 ,
 
 306 N.C. at 696
 
 ,
 
 295 S.E.2d at
 
 456 )). The sexual activity the defendant in
 
 Martin
 
 wished to present occurred on the same day and time as the sexual activity at issue in that case. Here, the evidence showed A.B. had not engaged in sexual activity for
 
 *539
 
 several months prior to the actions at issue. A.B.'s parents also knew she had been sexually active for several years prior to the incidents. No evidence ties A.B.'s past sexual activity or parental punishment to the incident that occurred on 21 February 2014.
 

 The court's analysis in both
 
 Martin
 
 and
 
 Goins
 
 indicated the State's case relied largely upon the testimony of the prosecuting witness, and both defendants had sought admission of evidence tending to show the witness had motive to falsely accuse. In both cases, this Court ruled this evidence could be relevant.
 

 Id.
 

 at ----,
 
 774 S.E.2d at 336
 
 ,
 
 Goins
 
 , --- N.C.App. at ----,
 
 781 S.E.2d at 61
 
 . Specifically in
 
 Martin
 
 , the Court noted that "[t]here were no other eyewitnesses or any physical evidence proving the crime had occurred."
 
 Martin
 
 , --- N.C.App. at ----,
 
 774 S.E.2d at 336
 
 .
 

 A.B.'s allegations and testimony is supported by other compelling physical evidence submitted by the State. First, the evidence showed recovered samples collected from A.B.'s anus, chest, external genitalia, and neck in the rape kit contained material matching Defendant's DNA profile. Second, Defendant's employer's GPS records of the times and locations of the vehicle driven by Defendant, together with his denials and many false statements, showed that he drove and parked the vehicle near the apartment during the times the rape and sexual offenses occurred after he left the hospital. The vehicle remained at the apartment during the time the rape and sexual offenses occurred and left near the time A.B's father picked her up from the scene immediately following the attack. Third, Defendant gave conflicting accounts until confronted with GPS evidence from the vehicle he drove, failed to keep his appointment at the Law Enforcement Center
 
 *273
 
 the day after the incident and never returned detectives' calls, disappeared after he was first questioned by police, and altered his appearance by cutting off his dreadlocks before he was located and arrested.
 

 Testimony presented during the
 
 in camera
 
 hearing supports the trial court's determination to block the victim's prior sexual activity as the type of irrelevant evidence the Rape Shield Statute was enacted to exclude.
 
 See
 
 N.C. Gen. Stat. § 8C-1, Rule 412. A.B.'s testimony indicated her parents were aware of her prior sexual activity and she was not concerned about being punished for engaging in sexual conduct. When asked whether she was seriously punished, she said: "No ... it was more of something that I just had to think about and realize the choices that I made rather than my parents actually punishing me." Nothing in her parents' testimony indicated a reason to doubt A.B.'s statement to that point. At most, her parents indicated that as consequences, they had taken away some of her privileges and cell phone.
 

 *540
 
 Defendant contends A.B.'s father's testimony supported an inference that A.B.'s father suspected A.B. might have been engaged in sexual activity with a boyfriend when he arrived to pick her up the night of the rape. No evidence shows A.B.'s boyfriend was present at the apartment or that someone else was engaged in sexual conduct with A.B. during the time the offenses occurred. A.B. testified Defendant turned on the lights and she recognized his eyes, nose, voice, and dreadlocks even with the mask over his face. Defendant admitted to police that when he went inside the apartment on the night of the rape, no one else was there other than A.B. and he observed she was asleep in her bed.
 

 The trial court correctly excluded the evidence regarding A.B.'s past sexual activity. This evidence is precisely what the Rape Shield Statute was enacted to exclude: evidence with "little relevance to the case and [that] has a low probative value."
 
 Younger,
 

 306 N.C. at 696
 
 ,
 
 295 S.E.2d at 456
 
 . A.B.'s past sexual activities and parental punishments were not tied in any substantive manner to the incidents which occurred on 21 February 2014 or to A.B.'s motive to fabricate these allegations. As the trial court also noted, even if relevant, this evidence would have been more prejudicial than probative.
 
 See
 
 N.C. Gen. Stat. § 8C-1, Rule 403.
 

 B. Constitutional Right to Present a Complete Defense
 

 Defendant argues his constitutional right to present a complete defense was violated by the exclusion of the evidence showing A.B. had been punished for her previous sexual activity. We disagree.
 

 The right of a defendant to cross-examine an adverse witness is a substantial right.
 
 See
 

 Olden v. Kentucky
 
 ,
 
 488 U.S. 227
 
 , 231-32,
 
 109 S.Ct. 480
 
 , 482-83,
 
 102 L.Ed.2d 513
 
 , 519-20 (1988). As such, an unreasonable exclusion of relevant evidence about a witness's sexual behavior violates a defendant's ability to introduce evidence relevant to his defense.
 
 Id
 
 . at 232-33,
 
 109 S.Ct. at 483-84
 
 ,
 
 102 L.Ed.2d at 520-21
 
 . However, the Supreme Court of the United States has stated:
 

 "[T]he right to present relevant testimony is not without limitation. The right 'may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.' "
 
 Rock v. Arkansas
 
 ,
 
 483 U.S. 44
 
 , 55 [
 
 107 S.Ct. 2704
 
 ,
 
 97 L.Ed.2d 37
 
 ] (1987), quoting
 
 Chambers v. Mississippi
 
 ,
 
 410 U.S. 284
 
 , 295 [
 
 93 S.Ct. 1038
 
 ,
 
 35 L.Ed.2d 297
 
 ] (1973). We have explained, for example, that "trial judges retain wide latitude" to limit reasonably a criminal defendant's right to cross-examine a witness "based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'
 

 *541
 
 safety, or interrogation that is repetitive or only marginally relevant."
 
 Delaware v. Van Arsdall
 
 ,
 
 475 U.S. 673
 
 , 679 [
 
 106 S.Ct. 1431
 
 ,
 
 89 L.Ed.2d 674
 
 ] (1986).
 

 Michigan v. Lucas
 
 ,
 
 500 U.S. 145
 
 , 149,
 
 111 S.Ct. 1743
 
 , 1746,
 
 114 L.Ed.2d 205
 
 , 212 (1991). In
 
 Lucas
 
 , the Supreme Court of the United States then held that the Michigan Rape Shield Statute "represents a valid legislative determination that rape victims deserve heightened protection against surprise, harassment, and unnecessary invasions of privacy."
 
 Id
 
 . at 149-50,
 
 111 S.Ct. at 1746
 
 ,
 
 114 L.Ed.2d at 212
 
 .
 

 *274
 
 The Supreme Court of North Carolina has similarly concluded that "there is no constitutional right to ask a witness questions that are irrelevant."
 
 Fortney
 
 ,
 
 301 N.C. at 35
 
 ,
 
 269 S.E.2d at 112
 
 (citations omitted). In
 
 Fortney
 
 , the Supreme Court considered a challenge to the Rape Shield Statute on Confrontation Clause grounds.
 
 Id
 
 . at 36,
 
 269 S.E.2d at
 
 112-13 ;
 
 see
 
 U.S. Const. Amend. 6. Even with North Carolina's wide-ranging policy of cross-examination, the Court held that "while a defendant may generally cross-examine to impugn the credibility of a witness, this right is not inviolate. Indeed ... a court has a duty to protect a witness 'from questions which go beyond the bounds of proper cross-examination merely to harass, annoy or humiliate....' "
 
 Id
 
 . at 36,
 
 269 S.E.2d at 113
 
 (quoting
 
 Alford v. United States
 
 ,
 
 282 U.S. 687
 
 , 694,
 
 51 S.Ct. 218
 
 , 220,
 
 75 L.Ed. 624
 
 , 629 (1931) ).
 

 The Court in
 
 Fortney
 
 considered the legislative and procedural purpose of the Rape Shield Statute and how the statute's exceptions "provide ample safeguards to insure that relevant evidence is not excluded."
 
 Id
 
 . at 41,
 
 269 S.E.2d at 115
 
 . Concluding its analysis of the constitutional issue, the Court stated:
 

 All of [ Rule 412 's] exceptions define those times when the prior sexual behavior of a complainant
 
 is
 
 relevant to issues raised in a rape trial, and are not a revolutionary move to exclude evidence generally considered relevant in trials of other crimes.
 

 Nor does the statute stop with definitions. If any question arises concerning evidence of a victim's prior sexual history, that question may be presented at an
 
 in camera
 
 hearing where opposing counsel may present evidence, cross-examine witnesses and generally attempt to discern the relevance of proffered testimony in the crucible of an adversarial proceeding away from the jury. In summary, then, [the Rape Shield Statute] merely contains and channels long-held tenets of relevance by providing a statutory
 
 *542
 
 definition of that relevance and by providing a procedure to test that definition within the context of any particular case. Defendant's substantive right to cross-examine is not impermissibly compromised.
 

 Id
 
 . at 42,
 
 269 S.E.2d at 116
 
 (emphasis in original).
 

 When the trial court properly finds proffered evidence is irrelevant or its probative value is substantially outweighed by its prejudicial value, it correctly orders a defendant to abstain from asking about that evidence on cross examination.
 
 See
 
 id.
 

 Here, the trial court properly excluded the evidence Defendant sought to introduce as irrelevant under the Rape Shield Statute. The trial court did not violate Defendant's constitutional right to present a complete defense by preventing Defendant from cross-examining the witnesses on irrelevant evidence.
 
 See
 

 id
 
 .
 

 V. Conclusion
 

 The trial court correctly excluded the evidence that A.B. had previously engaged in unrelated sexual activity and was punished by her parents under the Rape Shield Statute. Since this evidence was irrelevant, Defendant's constitutional right to present a complete defense was not violated. Defendant received a fair trial free from the prejudicial errors he preserved and argued.
 

 NO ERROR.
 

 Judges CALABRIA and DAVIS concur