TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-03-00460-CR




James Thomas LaPointe, Appellant

v.

The State of Texas, Appellee





FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT
NO. 03-111-K368, HONORABLE BURT CARNES, JUDGE PRESIDING




O P I N I O N


                        Appellant James Thomas LaPointe was convicted by a jury of one count of
aggravated kidnapping, one count of assault-family violence second, and three counts of aggravated
sexual assault. See Tex. Pen. Code Ann. § 20.04 (West 2003); id. §§ 22.01, 22.021 (West Supp.
2004).


 His wife Kara LaPointe was the victim. James


 argues that the district court erred because: 
(1) it barred James and James’s counsel from attending an in camera hearing to determine the
admissibility of evidence of the alleged victim’s previous sexual conduct; (2) it refused to allow
James’s counsel to make offers of proof or bills of exception regarding evidence of the victim’s
previous sexual conduct; (3) it excluded evidence of the victim’s previous sexual conduct and other
evidence; (4) it erroneously admitted evidence of extraneous acts by James; (5) the evidence is
factually insufficient to support his conviction. We agree that the district court erred in barring
James’s counsel from the in camera hearing and reverse and remand the district court’s judgments
of conviction.




BACKGROUND
                        James and Kara LaPointe, were married in March 2000 following the birth of their
son, J.L. In July 2001, following repeated marital difficulties, the couple separated, and Kara and
J.L. moved in with Kara’s mother.
                        On October 4, 2001, Kara and J.L. were at her mother’s house in Williamson County
when James arrived and apparently began to argue with Kara. Kara testified at trial that she told
James to leave, but James refused to leave and assaulted her by pulling out some of her hair,
throwing her to the floor, and stepping on her hand and head. She stated that James forced her to
remove her clothes, told her to lie down on the bed, and forced her to perform oral sex on him and
allow him to perform oral sex on her. He then forced her to have vaginal sex with him.
                        Kara testified that James threatened her with a pair of pinking shears and made Kara
and J.L. leave with him. After the three arrived at James’s apartment in Travis County, James again
performed oral sex on Kara and forced her to perform oral sex on him. Kara stated that James also
inserted a water bottle into her vagina. She testified that James forced her to engage in sexual
intercourse with him again that evening. While the two were asleep that night, James handcuffed
their wrists together.
                        Kara testified that the next morning, James, Kara, and J.L. returned to Kara’s
mother’s house in Williamson County, where James again forced Kara to engage in sexual
intercourse with him. Kara testified that James forced her to write a letter conveying custody of J.L.
to James; James then took Kara to a notary public, where Kara signed the letter in front of the notary. 
James then returned Kara to her mother’s house, and ordered Kara to remain quiet about the events
that had just occurred; he then left with J.L.
                        After James left, Kara told her mother what had happened; Kara’s mother then called
the Leander Police Department. Leander police obtained an arrest warrant for James and a search
warrant for his Travis County apartment. On the morning of October 6, Leander and Austin police
officers entered James’s apartment and discovered James hiding with J.L. in the apartment’s attic. 
The police also discovered a water bottle and a pair of pinking shears in the apartment.
                        James was indicted and tried on one count of aggravated kidnapping, one count of
assault-family violence second, and three counts of aggravated sexual assault. See Tex. Pen. Code
Ann. §§ 20.04, 22.01, 22.021. After a four-day trial, a jury convicted James on all five counts and
sentenced James to twenty years’ imprisonment for the count of assault-family violence second and
life imprisonment for the remaining four counts. This appeal followed.

DISCUSSION
Rule 412
                        Evidence of an alleged victim’s past sexual conduct is admissible in a prosecution
for sexual assault only under limited circumstances. Tex. R. Evid. 412(b). The Texas Rules of
Evidence provide:
 
(b)  Evidence of Specific Instances. In a prosecution for sexual assault or aggravated
sexual assault, or attempt to commit sexual assault or aggravated sexual assault,
evidence of specific instances of an alleged victim’s past sexual behavior is also
not admissible, unless:
 
       (1)  such evidence is admitted in accordance with paragraphs (c) and (d) of this
rule;
 
       (2)  it is evidence:
 
               (A) that is necessary to rebut or explain scientific or medical evidence
offered by the State;
 
               (B)  of past sexual behavior with the accused and is offered by the accused
upon the issue of whether the alleged victim consented to the sexual
behavior which is the basis of the offense charged;
 
               (C)  that relates to the motive or bias of the alleged victim;
 
               (D) is admissible under Rule 609 [regarding impeachment by evidence of
conviction of a crime]; or
 
               (E)  that is constitutionally required to be admitted; and
 
       (3)  its probative value outweighs the danger of unfair prejudice.
 
(c)   Procedure for Offering Evidence. If the defendant proposes to introduce any
documentary evidence or to ask any question, either by direct examination or
cross-examination of any witness, concerning specific instances of the alleged
victim’s past sexual behavior, the defendant must inform the court out of the
hearing of the jury prior to introducing any such evidence or asking any such
question. After this notice, the court shall conduct an in camera hearing,
recorded by the court reporter, to determine whether the proposed evidence is
admissible under paragraph (b) of this rule. The court shall determine what
evidence is admissible and shall accordingly limit the questioning. The
defendant shall not go outside these limits or refer to any evidence ruled
inadmissible in camera without prior approval of the court without the presence
of the jury.
 
(d)  Record Sealed. The court shall seal the record of the in camera hearing required
in paragraph (c) of this rule for delivery to the appellate court in the event of an
appeal.
 
 
Tex. R. Evid. 412(b)-(d). Rule 412 is commonly referred to as the “rape shield” rule.  See Southwell
v. State, 80 S.W.3d 647, 649 (Tex. App.—Houston [1st Dist.] 2002, no pet.). 

The District Court’s In Camera Procedure
                        At trial, James sought to introduce evidence of Kara’s previous sexual behavior. The
district court concluded that rule 412(c) required that only the judge, alleged victim, and court
reporter needed to be present at the in camera hearing. The district court proposed that James’s
counsel would submit specific areas of inquiry for the judge to discuss with Kara. The district court
would then determine the admissibility of any evidence of previous sexual behavior based on the
court’s own questioning of Kara outside the presence of James or his attorney.
                        James’s counsel requested the right to examine Kara with respect to several subject
areas. First, James sought to introduce evidence of Kara’s previous sexual behavior with James upon
the issue of whether Kara consented to the sexual behavior in question. At trial, Kara testified that
James handcuffed her wrist to his while they slept. James maintained that they had previously used
a pair of handcuffs—which Kara admitted she had given him—in consensual sexual activity, and
that this evidence was admissible to show that Kara had consented to the events at issue here.
                        Second, James sought to examine Kara regarding their prior use of objects such as
vibrators in consensual sexual activity. James argued this evidence was admissible to show that
Kara consented to the sexual activity at issue here, which allegedly involved the use of a water bottle.
                        Third, James sought to introduce evidence of Kara’s recent sexual encounter with a
friend


 to present an alternative explanation for Kara’s injuries and rebut evidence offered by the
State, which included evidence of bruising and vaginal trauma to Kara.
                        Fourth, James sought to introduce evidence regarding Kara’s possible motive or bias. 
James’s counsel explained this argument to the district court as follows:

I believe that one of the possible motives or explanations for this case is that . . . the
alleged victim had engaged in conduct which would jeopardize her ability to keep her
child, that she by the admissions of the State, what they have allowed me to get in,
she had engaged in sexual activities with some people, [naming the complainant’s
friend]. I believe there are other people that she has done that with and that those
other sexual escapades would lead to problems in a custody case. Whether she would
win them or not, I don’t think is material, but would lead to a problem or a set of
problems that would be posed in a custody case regarding the child, [J.L.]. And as
a result of that, that having signed off on the letter, it is plausible that she . . . now
realizes she’s done wrong, and she is putting together a rape story for—to avoid a
child custody matter.
 
                        We have reviewed the sealed transcript of the in camera hearing. In the hearing, the
district court briefly discussed the first two areas of inquiry with Kara and ruled that inquiry
regarding her previous sexual activity with James was inadmissible. The judge ruled that evidence
regarding intercourse between Kara and her friend was already in the record, so he would not
entertain further questioning in that area.


 Finally, the judge ruled that any evidence of the final area
of inquiry—bias by Kara stemming from a desire to gain custody of J.L.—was not admissible.
                        James argues that the in camera hearing described in rule 412(c) requires at a
minimum that a defendant’s counsel be afforded the opportunity to examine the alleged victim
regarding specific instances of previous sexual conduct. See Tex. R. Evid. 412(c). James argues that
the district court’s failure to allow James’s counsel to attend the hearing constitutes reversible
constitutional error because the procedure denied James his constitutional right to confront witnesses
and denied him his constitutional right to the assistance of counsel. See U.S. Const. amend. VI (“In
all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses
against him . . . and to have the Assistance of Counsel for his defence.”); Tex. Const. art. I, § 10
(accused “shall have the right of being heard by himself or counsel, or both, [and] shall be confronted
by the witnesses against him”). In a separate issue, James asserts that the district court’s refusal to
allow him to make a bill of exception regarding the alleged victim’s previous sexual conduct
constitutes reversible error.

Construction and Application of Rule 412
                        The central question in the case before us is whether rule 412(c) requires a trial court
to afford a defendant and his counsel an opportunity to be present and cross-examine the alleged
victim at an in camera hearing. In making this determination, we examine principles of statutory
construction as well as the effect of the district court’s interpretation of the rule on James’s
constitutional rights.
                        In analyzing a rule of evidence, it is appropriate to employ principles of statutory
construction. See Ludwig v. State, 931 S.W.2d 239, 241 (Tex. Crim. App. 1996). The starting point
for statutory analysis is the text of the relevant provision. Ex parte Kuester, 21 S.W.3d 264, 266
(Tex. Crim. App. 2000); State v. Laird, 38 S.W.3d 707, 712 (Tex. App.—Austin 2000, pet. ref’d). 
Undefined words in a statute are ordinarily given their plain meaning, unless the statute shows that
they were used in some other sense. Daniels v. State, 754 S.W.2d 214, 219 (Tex. Crim. App. 1988);
State v. Wofford, 34 S.W.3d 671, 680 (Tex. App.—Austin 2000, no pet.). Every word of a statute
is presumed to have been used for a purpose, and every word excluded must also be presumed to
have been excluded for a purpose. Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 540 (Tex.
1981). 
                        The language in question provides: “[T]he court shall conduct an in camera hearing,
recorded by the court reporter, to determine whether the proposed evidence is admissible under
paragraph (b) of this rule.” Tex. R. Evid. 412(c). The crucial phrase is “in camera hearing.” 
Because neither “in camera” nor “hearing” are defined in either the Texas Rules of Evidence or the
Texas Penal Code, we will use their plain meaning in analyzing the requirements of rule 412(c). 
See Daniels, 754 S.W.2d at 219.
                        “Hearing” is defined as: “1. A judicial session, usu[ally] open to the public, held for
the purpose of deciding issues of fact or of law, sometimes with witnesses testifying.” Black’s Law
Dictionary 725 (7th ed. 1999). “In camera” is defined as: “1. In the judge’s private chambers. 2.
In the courtroom with all spectators excluded.” Id. at 763. “Though this phrase usually refers to a
judge’s chambers, it may also refer to a courtroom from which all spectators are excluded.” Bryan
A. Garner, Dictionary of Modern Legal Usage 428 (2d ed. 1995).
                        “In camera hearing,” therefore, denotes a judicial session held either in the judge’s
chambers or in the courtroom with all spectators excluded.


 But nothing about the exclusion of
outside spectators from a hearing implies that a judge could exclude the parties altogether and have
a private conservation with a witness. Indeed, federal rule 412 provides for an in camera hearing
on the admissibility of a victim’s past sexual behavior and explicitly states that the victim and parties
have a right to attend and be heard. Fed. R. Evid. 412(c)(2). Although the language of the federal
rule differs from the Texas rule 412, the Texas Rules of Evidence are patterned on the federal rules
and we are guided by the federal rules in construing our own. Potier v. State, 68 S.W.3d 657, 662
n.28 (Tex. Crim. App. 2002). 
                        Similarly, Texas Rule of Evidence 508(c)(3) provides for in camera disclosure of the
identity of an informant. The rule specifies that all parties are to be present at every stage of the
proceeding “except a disclosure in camera, at which no counsel or party shall be permitted to be
present.” Tex. R. Evid. 508(c)(3). If in camera meant the exclusion of the parties and counsel by
definition, then the additional words excluding counsel and the parties would be superfluous.


 See
Campbell v. State, 49 S.W.3d 874, 876 (Tex. Crim. App. 2001) (In construing a statute, “we assume
that every word has been used for a purpose and that each word, phrase, clause, and sentence should
be given effect if reasonably possible.”). 
                        Furthermore, the ordinary definition of a hearing assumes the normal adversarial
process that is a basic, long-established feature of our system of justice. Aspects of this adversarial
process, such as the right to cross-examine adverse witnesses, are guaranteed by our state and federal
constitution, as we discuss below. The adversarial nature of our judicial process also has deep roots
in the English common law, from which America’s founding fathers (and ultimately those of Texas)
derived many of our constitutional principles. As Justice Scalia recently observed in Crawford v.
Washington, 
 
English common law has long differed from continental civil law in regard to the
manner in which witnesses give testimony in criminal trials. The common-law
tradition is one of live testimony in court subject to adversarial testing, while the civil
law condones examination in private by judicial officers. 
 
 
541 U.S. 36, ___ (2004) (citing 3 W. Blackstone, Commentaries on the Laws of England 373-74
(1768)). 
                        We see nothing in rule 412(c)’s requirement of an “in camera” procedure that signals
a departure from the characteristic adversarial nature of Texas “hearings” as we have historically
known them. Cf. Acker v. Texas Water Comm’n, 790 S.W.2d 299, 301 (Tex. 1990) (“A statute is
presumed to have been enacted by the legislature with complete knowledge of the existing law and
with reference to it.”). In particular, we believe that if the court of criminal appeals had envisioned
an anomalous, European-style procedure of private judicial interrogation, it surely would have made
such intent more explicitly when promulgating rule 412. Indeed, where the legislature and our
higher courts have required such rare departures from traditional adversarial procedures, they have
clearly stated so. See Tex. Fam. Code Ann. §33.003(k) (West 2002); Tex. Parental Notification R.
2.4(c). 
                        Nor does the history of rule 412 suggest any such intent. We discussed rule 412 in
Cuyler v. State:

Rule 412 is derived from the “rape shield statute” enacted by the legislature in
1975.[


] Before the statute was enacted, sexual assault victims often found
themselves subjected to abusive, embarrassing, and irrelevant inquiries into their
private lives, with the result that many sexual assault victims chose not to report the
attack rather than face such questioning. Rule 412, like its predecessor statute,
represents an explicit decision to eliminate trial practices that may have frustrated
society’s vital interest in the prosecution of sexual crimes. 
 
 
841 S.W.2d 933, 936 (Tex. App.—Austin 1992, no pet.) (citation omitted), overruled on other
grounds by Halstead v. State, 891 S.W.2d 11 (Tex. App.—Austin 1994, no pet.). The rationale
behind rape shield laws was described by one court as follows:

[E]vidence of a rape victim’s prior sexual activity is of dubious probative value and
relevance and is highly embarrassing and prejudicial. Often such evidence has been
used to harass the prosecuting victim. Sponsors of [rape shield] statutes assert that
they encourage victims of sexual assault to report the crimes without fear of having
their past sexual history exposed to the public.
 
 
Bell v. Harrison, 670 F.2d 656, 658 (6th Cir. 1982), quoted in Allen v. State, 700 S.W.2d 924, 929
(Tex. Crim. App. 1985). The notes of the advisory committee on the federal rule 412 also emphasize
the protection of the victim from public humiliation:
 
The rule aims to safeguard the alleged victim against the invasion of privacy,
potential embarrassment and sexual stereotyping that is associated with public
disclosure of intimate sexual details and the infusion of sexual innuendo into the fact-finding process. By affording victims protection in most instances, the rule also
encourages victims of sexual misconduct to institute and to participate in legal
proceedings against alleged offenders.
 
Fed. R. Evid. 412 advisory committee notes. Clearly, rule 412 was intended to address the
disincentive for victims to report and prosecute sexual crimes because of the particular threat that
the victim would have her sexual history publicly disclosed.


 See Allen, 700 S.W.2d at 929. 
                        This intent is achieved by ensuring that the court can first hear and evaluate the
probity of evidence of an alleged victim’s sexual history in a private setting before allowing that
sensitive information to be interjected into the public domain. Excluding the parties does little if
anything to advance this intent. The victim will still have to face the defendant when she testifies
in open court on relevant matters and the testimony about the alleged victim’s sexual history will
presumably concern matters that counsel has already investigated. 
                        Additionally, we are required, when possible, to construe the rules of evidence
consistently with the constitution. Tex. R. Evid. 101; see also Tex. Gov’t Code Ann. § 311.021
(West 1998); Lebo v. State, 90 S.W.3d 324, 329-30 (Tex. Crim. App. 2002). If rule 412 were
construed to exclude the parties, it would, as explained below, violate the defendant’s constitutional
rights. 

Constitutional Considerations
       Confrontation Clause
                        The Texas Constitution provides that in all criminal prosecutions, the accused “shall
be confronted by the witnesses against him.” Tex. Const. art. I, § 10. This guarantee “has as its
purpose the protection of an accused against processes of a secret and inquisitorial nature.” Id.
interp. commentary (West 1997); see also Robertson v. State, 142 S.W. 533, 543 (Tex. Crim. App.
1911) (“By our Constitution it is clearly made manifest that no man shall be tried and condemned
in secret and unheard.”).
                        The guarantee that a defendant in a criminal prosecution shall be “confronted by the
witnesses against him” is a right also found in the United States Constitution. U.S. Const. amend.
VI.


 “The central concern of the Confrontation Clause is to ensure the reliability of the evidence
against a criminal defendant by subjecting it to rigorous testing in the context of an adversary
proceeding before the trier of fact.” Maryland v. Craig, 497 U.S. 836, 845 (1990). Included in the
right to confront adverse witnesses is the right to reasonable cross-examination. Olden v. Kentucky,
488 U.S. 227, 231 (1988) (citing Davis v. Alaska, 415 U.S. 308, 315-316 (1974)).


 “[T]he exposure
of a witness’[s] motivation in testifying is a proper and important function of the constitutionally
protected right of cross-examination.” Id. (quoting Davis, 415 U.S. at 316-17). The Supreme Court
recently explained in Crawford that the confrontation clause represents a choice, deeply entrenched
in our law, that the reliability of testimony is to be determined through cross examination. Crawford,
124 S. Ct. at 1370 (confrontation clause is a procedural rather than substantive guarantee). The focus
on cross examination is in recognition of the unique power of the adversarial process in reaching the
truth. See Lilly v. Virginia, 527 U.S. 116, 124 (1999) (cross examination is the greatest legal engine
for the discovery of truth ever invented); California v. Green, 399 U.S. 149, 159 (1970) (citing 5 J.
Wigmore, Evidence § 1367 (3d ed. 1940)).
                        The rights to confrontation and cross-examination found in our state and federal
constitutions were used to challenge the constitutionality of the former rape shield statute, the
precursor to rule 412. In Allen v. State, the Texas Court of Criminal Appeals determined that the
rape shield statute was constitutional on its face and as applied to Allen, who argued that the rape
shield statute violated his right to confront adverse witnesses. 700 S.W.2d at 932. In so holding,
the court stated:

The constitutional right to confront adverse witnesses is fundamental and is of such
importance that a State’s interest in protecting a certain class of witnesses from
embarrassment must fall before the right of confrontation and cross-examination. 
Thus a statute that purports to prohibit completely the introduction of the victim’s
consensual sexual activity with persons other than the defendant is unconstitutional
unless given a judicial gloss requiring a hearing out of the jury’s presence so that the
defendant, upon motion, may be given an opportunity to demonstrate that due process
requires the admission of such evidence because probative value in the context of
that particular case outweighs its prejudicial effect on the prosecutrix.[


]
Id.
                        Although the question of whether a defendant’s counsel must be present at the hearing
was never expressly addressed by the court of criminal appeals, our review of Allen and other case
law persuades us that a trial court’s failure to afford the parties the opportunity to be present at the
in camera hearing and examine the alleged victim regarding specific instances of previous sexual
conduct violates the defendant’s confrontation rights. In Allen, the court of criminal appeals
approvingly quoted North Carolina v. Fortney, 269 S.E.2d 110 (N.C. 1980), at considerable length. 
Allen, 700 S.W.2d at 930-931. In Fortney, the Supreme Court of North Carolina upheld the
constitutionality of that state’s rape shield law and wrote:

If any question arises concerning evidence of a victim’s prior sexual history, that
question may be presented at an in camera hearing where opposing counsel may
present evidence, cross-examine witnesses and generally attempt to discern the
relevance of proffered testimony in the crucible of an adversarial proceeding away
from the jury. In summary, then, [the North Carolina statute] merely contains and
channels long-held tenets of relevance by providing a statutory definition of that
relevance and by providing a procedure to test that definition within the context of
any particular case. Defendant’s substantive right to cross-examine is not
impermissibly compromised.
 
 
Fortney, 269 S.E.2d at 116 (emphasis added), quoted in Allen, 700 S.W.2d at 931. The Texas Court
of Criminal Appeals immediately followed its quote of Fortney by stating:

While the North Carolina statute is not totally like [the Texas rape shield statute], it
is similar in many respects and the language in Fortney is here instructive.
 
“Of course rape shield statutes should not be used to exclude highly relevant
evidence and violate the defendant’s right of confrontation or other constitutional
rights.”
 
 
Allen, 700 S.W.2d at 930-31 (quoting Bell, 670 F.2d at 658).
                        The defendant’s ability to have counsel attend the in camera hearing and examine the
alleged victim is the exact safeguard that preserves the constitutionality of our rape shield rule. We
therefore conclude that the confrontation clauses found in our federal and state constitutions require
a trial court to afford the State, the defendant, and defense counsel the opportunity to attend the in
camera hearing and examine the alleged victim out of the public eye.




       Right to the assistance of counsel
                        The exclusion of the defendant and his counsel from an in camera hearing also
implicates the right to the effective assistance of counsel. “In all criminal prosecutions, the accused
shall enjoy the right . . . to have the Asistance of Counsel for his defence.” U.S. Const. amend. VI;
see also Tex. Const. art. I, § 10. The Sixth Amendment right to counsel attaches upon the
commencement of adversarial proceedings. Kirby v. Illinois, 406 U.S. 682, 688-90 (1972). “[T]he
right to the effective assistance of counsel is recognized not for its own sake, but because of the
effect it has on the ability of the accused to receive a fair trial.” U.S. v. Cronic, 466 U.S. 648, 658
(1984). The right extends to all “critical stages” of the criminal proceeding, not just the actual trial. 
Hidalgo v. State, 983 S.W.2d 746, 752 (Tex. Crim. App. 1999). Whether a particular stage is critical
turns on an assessment of the usefulness of counsel to the accused at the time. Garcia v. State, 97
S.W.3d 343, 347 (Tex. App.—Austin 2003, no pet.); see Upton v. State, 853 S.W.2d 548, 553 (Tex.
Crim. App. 1993) (citing Patterson v. Illinois, 487 U.S. 285, 299-300 (1998); United States v. Wade,
388 U.S. 218, 235-39 (1967)); see also United States v. Ash, 413 U.S. 300, 313 (1973). Stated
differently, whether a particular part of the trial process is a “critical stage” is determined not by
whether the defendant suffered prejudice by the absence of effective assistance of counsel during that
part of the proceedings, but rather, whether critical rights of a defendant can be lost at the stage in
question. Medley v. State, 47 S.W.3d 17, 22 (Tex. App.—Amarillo 2000, pet. ref’d) (taking of
evidence on defendant’s guilt is critical stage) (citing Herring v. New York, 422 U.S. 853 (1975)
(final summation); White v. Maryland, 373 U.S. 59 (1963) (preliminary hearing); Hamilton v.
Alabama, 368 U.S. 52 (1961) (arraignment); Ferguson v. Georgia, 365 U.S. 570 (1961) (defendant
entitled to present his testimony by questions from his attorney)).
                        The in camera hearing to determine the admissibility of evidence of an alleged
victim’s previous sexual conduct is a critical stage of the proceedings at which a defendant has the
right to the assistance of counsel. In sexual assault cases, the credibility of the alleged victim could
well be the critical factor for the jury in determining the defendant’s guilt. Here, James’s defense
was that the alleged sexual conduct in question was consensual. To present this defense, James
sought to introduce evidence of the parties’ previous sexual conduct to show that the details of the
sexual activity at issue here were consistent with previous consensual sexual activity.
                        The district court’s in camera procedure thwarted James’s attempt to elicit such
testimony from Kara. Because the district court prevented the State, James, and James’s counsel
from attending the in camera hearing, Kara’s testimony regarding her previous sexual conduct was
not subjected to the adversarial process meant to test its veracity. Refusing to allow the parties in
a criminal proceeding to examine an alleged victim regarding her previous sexual conduct, albeit in
an in camera hearing, undermines the defendant’s ability to present a defense.
                        The State argues, without citing authority, that the in camera hearing was not a
critical stage of the proceeding:

In the in camera hearings conducted by the trial court during appellant’s trial, the
trial court asked all the questions of the witnesses. Neither appellant nor the State
was allowed to be present. Therefore the proceeding was not adversarial. Nor was
it an event at which appellant needed legal assistance, since he was not even present.
 
 
The State’s argument presupposes that counsel is not required to be present at the in camera hearing. 
Moreover, the State’s argument illustrates the precise reason why the district court should have
allowed James’s counsel to attend the hearing and examine Kara: the fact that the hearing was not
adversarial and that James’s counsel was not present denied to James the right to the effective
assistance of counsel.
                        We conclude that denying James the right to have counsel attend the in camera
hearing and examine Kara violated his right to confront witness and his right to the assistance of
counsel. 

Harm Analysis
                        The district court’s error in refusing to allow the parties to attend the in camera
hearing to examine Kara and other witnesses would not necessarily require reversal if we could
determine, based on our examination of the record and the relevant standard of harm analysis, that
the error was harmless. Because the district court’s erroneous application of rule 412 violated
James’s constitutional rights, we must reverse unless we determine beyond a reasonable doubt that
the error did not contribute to the conviction. Tex. R. App. P. 44.2(a); Wesbrook v. State, 29 S.W.3d
103, 119 (2000). However, the error itself prevented the development of a record from which we
might determine the error’s impact on the jury’s verdict and punishment, and therefore, we cannot
conclude that the error was harmless beyond a reasonable doubt. See Ex parte Russell, 738 S.W.2d
644, 646 (Tex. Crim. App. 1986) (we must be able to conclude from the record that the error was
harmless beyond a reasonable doubt).
                        The jury heard graphic testimony from Kara accusing James of brutally beating,
raping and kidnapping her. In the face of such evidence, we might well have concluded that any
testimony adduced from Kara at an adversarial hearing regarding her sexual history that was
erroneously excluded had no impact on the jury’s determinations, and affirm. But because the
parties were barred from the rule 412 hearing, Kara’s testimony was never developed, nor do we
even know the questions that counsel would have asked. On this record, any attempt to conduct a
harmless error analysis would require multiple levels of speculation: we would have to speculate
regarding what questions counsel would have asked, the responses Kara might have given, and the
impact of such testimony.


 Compounding these problems is the district court’s refusal to permit
James’s counsel to perfect a bill of review that might have revealed such testimony and questions.


 
Accordingly, we must reverse. 
CONCLUSION
                        The district court erred in refusing to allow James, his counsel, and counsel for the
State to attend the in camera hearing and examine Kara. This error is inconsistent with rule 412 and
violated James’s constitutional right to confront witnesses and his constitutional right to the
assistance of counsel. Because these errors prevented the development of a record on which we
might determine that the error was harmless beyond a reasonable doubt, we reverse the judgments
of conviction and remand the cause to the district court for further proceedings consistent with this
opinion.



 
 
                                                                        __________________________________________
                                                                        Bea Ann Smith, Justice
Before Justices Kidd, B. A. Smith and Pemberton;
       Justice Kidd Not Participating
Reversed and Remanded
Filed: March 17, 2005
Publish