STATE OF NORTH CAROLINA v. ALBERT GEORGE KHOURI, JR.

No. COA10-1030

(Filed 16 August 2011)

**1. Sexual offenses—first-degree sexual offense—indecent liberties—date of offenses—insufficient evidence—motion to dismiss improperly denied**

The trial court erred in a first-degree sexual offense and indecent liberties case by denying defendant's motion to dismiss for insufficient evidence. The State did not present sufficient evidence to show that the alleged sexual incidents occurred in 2000, as indicated on the indictment, and there was no indication in the record that the State made any attempt to amend the indictment to include the proper date range.

**2. Sexual offenses—sexual offense of person who is 13, 14, or 15 years old—indecent liberties—sufficient evidence—motion to dismiss properly allowed**

The trial court did not err in a statutory sexual offense of person who is 13, 14, or 15 years old and indecent liberties with a child case by denying defendant's motion to dismiss for insufficient evidence. There was substantial evidence that defendant committed sexual offenses against the victim and took indecent liberties with her even after he began having vaginal intercourse with her.

**3. Evidence—prior crimes or bad acts—sexual offenses—common plan or scheme—temporal proximity**

The trial court did not abuse its discretion in a sexual offenses case by admitting testimony pursuant to N.C.G.S. § 8C-1, Rules 404(b) and 403 regarding sexual contact between defendant and the prosecuting victim's cousin. There were sufficient similarities between the acts and the acts occurred within suffi-

cient temporal proximity to be admissible under Rule 404(b). Furthermore, the testimony was not more prejudicial than probative and was properly received for the purpose of showing a common plan or scheme.

**4. Evidence—expert testimony—not commentary on victim's credibility—no plain error**

The trial court did not commit plain error in a sexual offenses case by admitting testimony of an expert witness regarding the characteristics of sexually abused children. The witness's testimony did not go to the victim's credibility.

**5. Evidence—Rape Shield Act—not implicated in two instances—testimony of victim's prior sexual activity properly excluded**

The trial court did not err in a sexual offenses case by excluding testimony by defense witnesses that the victim had made inconsistent statements. The Rape Shield Act was not implicated in two of the rulings defendant objected to and the trial court properly excluded testimony under the Rape Shield Act concerning the possible paternity of the victim's child.

Appeal by defendant from judgments entered on or about 12 March 2010 by Judge Alan Z. Thornburg in Superior Court, Avery County. Heard in the Court of Appeals 9 February 2011.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General R. Kirk Randleman, for the State.*

*Appellate Defender Staples S. Hughes for defendant-appellant.*[1]

STROUD, Judge.

Albert George Khouri, Jr. ("defendant") appeals from six judgments entered following jury verdicts finding him guilty of two counts of first-degree sexual offense, six counts of indecent liberties with a child, three counts of statutory rape, and three counts of statutory sexual offense. We conclude that one judgment should be vacated, but find no error in the remaining five judgments.

---

1. Attorney Reita P. Pendry signed defendant's brief on appeal, but on 4 March 2011, this Court granted the Appellate Defender's motion to withdraw Ms. Pendry for health reasons and substitute the Appellate Defender as defendant's counsel.

STATE v. KHOURI

[214 N.C. App. 389 (2011)]

## I. Background

On 27 April 2009, defendant in six separate indictments was indicted on two counts of first-degree statutory sexual offense for engaging in sexual acts with T.B. ("Tina")[2], his granddaughter, in 2000 and 2001 when Tina was under age 13; six counts of indecent liberties with a child under the age of 16 for acts against Tina between 2000 and 2005; three counts of statutory rape of a person who is 13, 14, or 15 years of age for having vaginal intercourse with Tina between 2003 and 2005; and four counts of statutory sexual offense of a person who is 13, 14, or 15 years of age for engaging in sexual acts with Tina between 2002 and 2005. Defendant was tried on these charges at the 8 March 2010 Criminal Session of Superior Court, Avery County. The State's evidence tended to show that the victim, Tina was born on 30 March 1989 and was 20 years old at the time of trial. In the fall of 2000, after a dispute with her mother's boyfriend, Tina moved in with her grandparents, Carolyn Khouri and defendant. Not long after, in the spring of 2001, Tina went on a trip with her grandparents, and her great-grandmother to a casino in Pigeon Forge, Tennessee. At trial, Carolyn Khouri testified that the trip was actually to a motel and casino in Cherokee, North Carolina. Regardless of the location, while on the trip Tina's grandmother and great-grandmother were in the casino, when defendant started a conversation with Tina about boys and whether she allowed them to touch her private parts. Tina and defendant were alone in the bedroom and defendant began to touch Tina's vagina. After the touching, defendant and Tina, then got in a position where defendant had his mouth on Tina's vagina and his penis in her mouth. Following the sexual interaction, they took showers and joined her grandmother and great-grandmother for dinner.

After returning to her grandparents' house in Beech Mountain, North Carolina, Tina continued performing oral sex on defendant a few times a week. Each episode usually involved defendant giving Tina a certain look, going over to her, touching her vagina, receiving oral sex, and then ejaculating on her stomach. The incidents generally occurred in defendant's bedroom while her grandmother was at work. Defendant told Tina not to tell anyone about the events.

About a year later, when Tina was twelve, she told her aunt and uncle about the situation. They did not call the police or social ser-

---

2. We will refer to the victim T.B. by the pseudonym Tina, to protect the victim's identity and for ease of reading.

vices, but told Tina's father. Tina subsequently moved in with her father for a period of time.

Eventually, around the age of thirteen, Tina moved back in with her grandparents. Defendant resumed the sexual contact with Tina. He would touch her vagina, while she would "rub[] his penis" and perform oral sex on him. This happened more times than Tina could count.

Around the age of fourteen, Tina began her menstrual cycle and defendant began having unprotected vaginal intercourse with her. Tina testified that her relationship with defendant was mutual because she did not know any better and at times defendant told her that she was special. The intercourse started about two times a week, but progressed in frequency until it occurred up to twice a day. This persisted until Tina was eighteen years old. Tina again, never told anyone about what was going on.

During her junior year in high school, Tina met her boyfriend and future husband, William Bryant. Tina moved in with him sometime during her senior year. Soon thereafter, she discovered that she was pregnant and was unsure whether the father was defendant or her boyfriend. She discussed it with defendant and they decided she should have an abortion. Her grandparents took her to Greensboro to have the procedure. In December 2007, Tina and Bryant moved to Tampa, Florida. In August 2008, the two had a baby girl. Tina eventually told defendant that she forgave defendant, but if she ever heard of him touching another child then she would immediately report him to the police.

In 2009, Tina learned that defendant had been "inappropriately" touching his granddaughter, Tina's eleven year old cousin, J.K. ("Jane").[3] Tina made a report to law enforcement in March 2009 about her encounters with defendant. She told law enforcement that defendant was uncircumcised and had dark spots on his scrotum. Detectives executed a search warrant on defendant and took pictures showing the characteristics described by Tina. At trial, Jane testified that she visited with defendant in his home and he touched her private area three or four times. He would place his hand under her pants and rub her private parts while she was sitting on his lap in the living room. Defendant told her if she "felt uncomfortable or anything" about him rubbing her "to just tell him that [she] was too old for it." Jane testified that these incidents with defendant touching her happened while

---

3. A pseudonym.

other people were in the living room, watching television. She eventually told her mother about the incidents.

During trial the State presented several witnesses. Debra Moore, a clinical psychologist with a specialty in child sexual abuse, testified after reviewing Tina's statements and listening to her testify. Dr. Moore testified that Tina's statements and emotional responses were consistent with sexually abused children. Jennifer Campbell, a child protective investigator with the Hillsborough County Sheriff's Department in Tampa, Florida, testified that she interviewed Tina and Tina told her about the incidents with defendant. Detective Troy Cook with the Avery County Sheriff's Department testified that he received a copy of Tina's interview from Ms. Campbell, as well as a typed statement from Tina. Detective Cook performed the search warrant on defendant and subsequently arrested defendant.

Tina's aunt, Rene Khouri, formerly married to defendant's son, Robert Khouri, testified that Tina told her about the incidents and that she wanted to call the police. Rene eventually went to Tina's grandmother, Carolyn Khouri's office with Robert, Tina, and Stephen Khouri, to tell her about the accusation. They then went to defendant's workplace and confronted him, but he was "extremely defensive" and made "excuses[.]" Jane also told Rene about the incidents in which defendant touched her and at that point Rene called the police. Robert Khouri also testified that after hearing about the incidents with Tina he confronted defendant, who gave what appeared to him to be reasonable explanations for the accusations and caused Robert to question whether Tina was telling the truth. Defendant testified in his own defense, stating that he had never inappropriately touched Tina and did not engage in any "sex acts with [his] granddaughter [Tina]" or his granddaughter Jane.

On 12 March 2010, a jury found defendant guilty on all counts. The trial court sentenced defendant to six consecutive sentences totaling a minimum of 1296 months to a maximum of 1614 months of imprisonment. The trial court also ordered defendant to register as a sex offender and participate in satellite based monitoring for life. Defendant gave notice of appeal in open court. On appeal defendant argues that (1) the trial court error in denying his motions to dismiss for insufficiency of the evidence; (2) the trial court erred in admitting evidence of his alleged sexual conduct with Jane; (3) the trial court committed plain error in admitting the testimony of the psychologist; and (4) the trial court erred in limiting defendant's examination of certain defense witnesses.

II.  Analysis

A. Sufficiency of the evidence

Defendant first contends that the trial court erred in denying his motions to dismiss. In support of his motions, defendant argues that the evidence presented by the State was insufficient to permit the jury to find guilt beyond a reasonable doubt. We agree in part.

A motion to dismiss for lack of sufficient evidence is reviewed by this Court to determine "whether the State presented substantial evidence in support of each element of the charged offense." *State v. Chapman*, 359 N.C. 328, 374, 611 S.E.2d 794, 827 (2005) (citation and quotation marks omitted). "Substantial evidence is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion." *State v. McNeill*, 359 N.C. 800, 804, 617 S.E.2d 271, 274 (2005) (citation and quotation marks omitted). In determining the sufficiency of the evidence, this Court views all evidence in the light most favorable to the State. *Id.* Even further, the inquiry explores the sufficiency of the evidence, but not its weight, which is a question for the jury. *Id.* Therefore, "if there is substantial evidence-whether direct, circumstantial, or both-to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *Id.* (brackets, citations, and quotation marks omitted).

Defendant moved at the close of the State's evidence for the trial court to dismiss all the counts for insufficient evidence. The trial court denied the motion and defendant renewed his motion at the end of all evidence, which was again denied by the trial court. Each of the indictments against defendant includes a combination of two or three of the following charges: (1) first-degree sexual offense in violation of N.C. Gen. Stat. § 14-27.4; (2) indecent liberties with a child in violation of N.C. Gen. Stat. § 14-202.1; or (3) statutory rape or sexual offense of a person who is 13, 14, or 15 years old in violation of N.C. Gen. Stat. § 14-27.7A.

To convict a defendant of first-degree sexual offense under N.C. Gen. Stat. § 14-27.4, the State must prove that: "(1) the defendant engaged in a 'sexual act,' (2) the victim was at the time of the act [thirteen] years old or less, and (3) the defendant was at the time four or more years older than the victim." *State v. Ludlum*, 303 N.C. 666,

667, 281 S.E.2d 159, 160 (1981). For a conviction of indecent liberties with a child, the State must prove that:

> (1) the defendant was at least 16 years of age; (2) he was five years older than his victim; (3) he willfully took or attempted to take an indecent liberty with the victim; (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred; and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire.

*State v. Thaggard*, 168 N.C. App. 263, 282, 608 S.E.2d 774, 786-87 (2005) (citations omitted); N.C. Gen. Stat. § 202.1(a). Finally, for the charges of statutory rape or sexual offense, the State must prove that "defendant engage[d] in vaginal intercourse or a sexual act with another person who [was] 13, 14, or 15 years old and the defendant [was] at least six years older than the person[.]" N.C. Gen. Stat. § 14-27.7A(a).

1. Sufficiency of the evidence for 09-CRS-290

[1] As to the first indictment, 09-CRS-290, for first-degree sexual offense and indecent liberties occurring between 30 March 2000 and 31 December 2000, defendant contends that the State did not present sufficient evidence of the crime and in the alternative Avery County did not have jurisdiction or venue over the matter. Defendant first argues that the State did not present sufficient evidence to show that the alleged sexual incidents occurred in 2000. At trial, the State presented evidence that the first sexual offense occurred while Tina was on vacation with her grandparents and great-grandmother in Pigeon Forge, Tennessee, in the spring of 2001. There is no evidence that the trip took place in 2000. Tina and Carolyn Khouri both testified that the trip took place in early 2001.

We have stated that "[t]he purpose of an indictment is to give a defendant notice of the crime for which he is being charged." *State v. Riffe*, 191 N.C. App. 86, 93, 661 S.E.2d 899, 905 (2008) (quotation marks and citation omitted). An indictment may be amended where the date of the crime is not an essential element of the offense. *State v. Whitman*, 179 N.C. App. 657, 665, 635 S.E.2d 906, 911 (2006). However, there is no indication in the record that the State made any attempt to amend indictment 09-CRS-290, to include the proper date range for the alleged crimes on the vacation to the casino, the judgment in 09-CRS-290, for first-degree sexual offense with a female under the age of 13 in violation of N.C. Gen. Stat. § 14-27.4, and indecent liberties with a child in violation of N.C. Gen. Stat. § 14-202.1, between 30 March 2000 and 31 December 2000. Accordingly, these

STATE v. KHOURI

[214 N.C. App. 389 (2011)]

charges must be vacated for lack of substantial evidence that the crimes occurred in 2000. As we have concluded that this judgment must be vacated, we need not address defendant's arguments as to jurisdiction or venue.

2. Sufficiency of the evidence for defendant's remaining charges

**[2]** Defendant also contends that the trial court erred in denying his motion to dismiss the four charges of statutory sexual offense of person who is 13, 14, or 15 years old and the four charges of indecent liberties with a child in 09-CRS-292, 09-CRS-293, 09-CRS-50288, and 09-CRS-50289 for insufficiency of the evidence. Defendant's main contention regarding these indictments is that allegedly Tina testified that around the age of fourteen, when the instances of vaginal intercourse began, all other incidents of touching or other sexual acts ceased, and as a result the additional charges of statutory sexual offense and indecent liberties, on top of the statutory rape charges, should be vacated for lack of substantial evidence. We disagree.

Defendant contends that according to Tina's testimony, once vaginal intercourse began, all other acts of touching or sexual conduct stopped, meaning that the elements of indecent liberties and statutory sexual offense were not met. The charge of indecent liberties is not a lesser included offense of statutory rape, as it does not require touching. *State v. Etheridge*, 319 N.C. 34, 50-51, 352 S.E.2d 673, 683 (1987). Our Supreme Court has held:

> A sexual encounter encompasses a number of independent but related actions, any and all of which may be undertaken for the purpose of arousal. Here the penetration of the victim, while perhaps defendant's ultimate goal, was not the only event in the sequence which could be found to have been performed for his gratification. While we do not care to speculate upon all possible motivations involved in human sexual behavior, we hold that the jury could properly infer that defendant ordered his children to undress, demanded that they assume submissive, sexually suggestive positions, and brandished his penis before them in their naked and helpless condition for the purpose of arousing or gratifying his sexual desire.

*Id.* at 49-50, 352 S.E.2d at 682-83.

A single act can warrant convictions for multiple, similar crimes, where the crimes are legally separate. *Id.* at 51, 352 S.E.2d at 683. Here, the State presented evidence that defendant initiated acts of

touching and oral sex with Tina around the ages of eleven or twelve and the acts occurred regularly following the initial occurrence. The State also presented evidence that defendant began having vaginal intercourse with Tina when she was around the age of fourteen. Tina did not testify that the instances of oral sex ceased once intercourse began, as defendant would have us believe, but merely testified as to the progression in the extent of sexual contact which occurred when she was 14; defendant added vaginal intercourse to the other sexual acts, which he had already routinely been committing upon her. Thus, the jury could reasonably infer that the sexual acts that began at the ages of eleven or twelve continued on occasion after the instances of vaginal intercourse began. Also, the jury could infer that defendant took indecent liberties with Tina in the scope of their many sexual encounters. Consequently, there was substantial evidence that defendant committed sexual offenses against Tina and took indecent liberties with her even after he began having vaginal intercourse with her. The trial court did not err in denying defendant's motions to dismiss in regards to judgments 09-CRS-291, 09-CRS-292, 09-CRS-293, 09-CRS-50288, and 09-CRS-50289.

B. Admission of evidence

**[3]** In his second argument, defendant contends that the trial court abused its discretion in admitting testimony pursuant to N.C. Gen. Stat. § 8C-1, Rules 404(b) and 403 regarding sexual contact between Jane and defendant. The State called Jane, Tina's cousin, to testify about the sexual contact to show defendant's common plan or scheme, but defendant argues that there was not enough of a connection between the alleged crimes to meet the requirements of Rule 404(b) and the testimony was more prejudicial than probative under Rule 403. Based on the following reasons, we disagree.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2009) provides that

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

We have noted that "Rule 404(b) evidence, however, should be carefully scrutinized in order to adequately safeguard against the improper introduction of character evidence against the accused." *State v. Al-Bayyinah,* 356 N.C. 150, 154, 567 S.E.2d 120, 122 (2002).

Because of "the dangerous tendency of Rule 404(b) evidence to mislead and raise a legally spurious presumption of guilt . . . its admissibility should be subjected to strict scrutiny by the courts." *Id.* (citation, quotation marks, and brackets omitted). In subjecting Rule 404(b) evidence to strict scrutiny, we must assure that the evidence meets the two constraints of "similarity and temporal proximity." *State v. Bowman*, 188 N.C. App. 635, 640, 656 S.E.2d 638, 644 (2008) (citation and quotation marks omitted). It must also "be relevant to the currently alleged crime." *State v. Carpenter*, 361 N.C. 382, 388, 646 S.E.2d 105, 110 (2007); N.C. Gen. Stat. § 8C-1, Rules 401 & 402 (2009). Following a determination of the admissibility of evidence under Rule 404(b), the trial court must evaluate whether the possibility of unfair prejudice substantially outweighs the probative value of the evidence pursuant to N.C. Gen. Stat. § 8C-1, Rule 403 (2009). *State v. Stevenson*, 169 N.C. App. 797, 800, 611 S.E.2d 206, 209 (2005). "That determination is within the sound discretion of the trial court, whose ruling will be reversed on appeal only when it is shown that the ruling was so arbitrary that it could not have resulted from a reasoned decision." *Id.* at 800-01, 611 S.E.2d at 209 (citation and quotation marks omitted).

Defendant's alleged touching of Jane could be considered relevant to the sexual acts at issue in Tina's case under Rule 401. *See* N.C. Gen. Stat. § 8C-1, Rule 401. "However, if the only relevancy is to show defendant's character or his disposition to commit an offense of the nature of the one charged, it is inadmissible under Rule 404(b)." *Carpenter*, 361 N.C. at 389, 646 S.E.2d at 110 (citations and quotation marks omitted). Accordingly, we must move to the Rule 404(b) analysis.

Defendant argues that there is not enough connection between the alleged crimes to pass Rule 404(b) analysis. Defendant notes that the "acts must be sufficiently similar as to logically establish a common plan or scheme to commit the offense charged, not merely to show the defendant's character or propensity to commit a like crime." *State v. Willis*, 136 N.C. App. 820, 823, 526 S.E.2d 191, 193 (2000) (citation omitted). Also, for the acts to be "similar" there must be "some unusual facts present or particularly similar acts[.]" *State v. Bush*, 164 N.C. App. 254, 261, 595 S.E.2d 715, 720 (2004) (citation omitted). But, we also noted that "[t]he similarities need not be unique and bizarre." *Stevenson*, 169 N.C. App. at 800, 611 S.E.2d at 209 (citation and quotation marks omitted).

Defendant's main contention is that the alleged similar acts are not sufficiently alike because the acts against Tina occurred in private while the acts against Jane occurred in plain view. Defendant's

argument points to one of the few distinctions among the several similarities in both Jane's and Tina's testimony: both incidents occurred while the victims were in the care of defendant, their grandfather; the victims were around the same age when defendant initiated his conduct; both occurred more than one time; and although, defendant's conduct with Jane did not occur over several years or escalate to oral sex or vaginal penetration like Tina, both initiated with defendant talking to them about whether they were old enough for him to touch their private parts and then defendant touching them. When analyzing 404(b) evidence, our Supreme Court "has been liberal in allowing evidence of similar sex offenses in trials on sexual crime charges." *State v. McCarty*, 326 N.C. 782, 785, 392 S.E.2d 359, 361 (1990) (citing *State v. Cotton*, 318 N.C. 663, 351 S.E.2d 277 (1987)). Therefore, under a liberal view of the evidence presented, the trial court did not err in finding sufficient similarities between the acts to be admissible under Rule 404(b).

Nevertheless, we must also address the issue of "temporal proximity." *Bowman*, 188 N.C. App. at 640, 656 S.E.2d at 644. The trial court specifically noted that the acts were not too remote in time from each other. Tina testified that the acts committed against her started in 2001 when she was eleven or twelve and continued until she was eighteen in 2007. Jane testified that the sexual acts committed against her occurred when she was around the ages of nine to ten, from 2007 until 2008. Also, at the time of trial it had only been nine years since the initial sexual acts by defendant to Tina. It appears that once the acts discontinued with Tina upon turning eighteen, defendant initiated new contact with Jane. We have stated that "[w]hen similar acts have been performed continuously over a period of years, the passage of time serves to prove, rather than disprove, the existence of a plan." *State v. Shamsid-Deen*, 324 N.C. 437, 445, 379 S.E.2d 842, 847 (1989). Consequently, the sexual acts against Tina and Jane occurred within sufficient "temporal proximity" to be admissible under Rule 404(b).

Finally, defendant argues that the trial court's allowance of Jane's testimony was more prejudicial than probative under Rule 403, as "the jury would surely be swayed by the improper evidence of [Jane] to see [defendant] as a sexual deviant." However, the State argues that the trial court did not abuse its discretion in allowing Jane's testimony. Here, the trial court admitted Jane's testimony for the limited purpose of showing that defendant had a common plan or scheme. The trial court correctly gave the jury a limiting instruction at the

time of Jane's testimony and prior to jury deliberations. We also note that evidence regarding defendant's actions with Jane was presented to explain Tina's delay in reporting her own sexual abuse to the police. She had previously told defendant that she forgave him but that she would report his abuse if she ever learned that he had touched another child; she did report defendant's abuse after learning that he had begun sexually abusing Jane. As a result, we cannot find that the trial court abused its discretion in concluding that Jane's testimony was not more prejudicial than probative. Moreover, Jane's testimony did not violate Rule 404(b) and was properly received for the purpose of showing a common plan or scheme.

## C. Expert testimony

[4] Defendant's third issue on appeal is whether or not the trial court erred in admitting testimony of an expert witness regarding the characteristics of sexually abused children. Defendant argues that the State's expert witness testified about the substance of Tina's statements to police and her demeanor on the stand, instead of the symptoms or behavioral problems identified in Tina. We disagree.

To properly preserve an issue for appellate review, a party must present to the trial court "a timely request, objection, or motion, stating the specific grounds for the ruling" and "obtain a ruling upon the party's request, objection, or motion." N.C.R. App. P. 10(b)(1). However, North Carolina Rule of Appellate Procedure 10(c)(4) also provides that

> [i]n criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error.

N.C.R. App. P. 10(c)(4). "[P]lain error analysis applies only to jury instructions and evidentiary matters[.]" *State v. Wiley*, 355 N.C. 592, 615, 565 S.E.2d 22, 39-40 (2002), *cert. denied*, 537 U.S. 1117, 154 L. Ed. 2d 795 (2003). In analyzing under plain error review, a defendant is entitled to reversal "only if the error was so fundamental that, absent the error, the jury probably would have reached a different result." *State v. Jones*, 355 N.C. 117, 125, 558 S.E.2d 97, 103 (2002). Defendant failed to object to the expert's testimony regarding the characteristics of sexually abused children; accordingly, we apply a plain error analysis to defendant's argument. *See* N.C.R. App. P. 10(c)(4).

At trial, the State called Dr. Debra Moore, a clinical psychologist with a specialty in child sexual abuse, to testify based on Tina's testimony and her review of Tina's statement. Dr. Moore had never met Tina prior to viewing her testimony at trial, but she had reviewed Tina's statement to police. Defendant does not argue that Dr. Moore was not qualified as an expert, but that Dr. Moore's testimony went to the credibility of Tina. An expert witness may not testify as to the credibility of a witness. *State v. Kim*, 318 N.C. 614, 621, 350 S.E.2d 347, 351 (1986). Nonetheless, "an expert witness may testify, upon a proper foundation, as to the profiles of sexually abused children and whether a particular complainant has symptoms or characteristics consistent therewith." *State v. Stancil*, 355 N.C. 266, 267, 559 S.E.2d 788, 789 (2002).

Defendant improperly attempts to rely on the decisions of, *State v. Delsanto*, 172 N.C. App. 42, 615 S.E.2d 870 (2005) and *Bush*, 164 N.C. App. 254, 595 S.E.2d 715 for the contention that an expert witness may not testify that a victim's statements and demeanor were consistent with child sexual abuse because that testimony would go to the credibility of the victim/witness. However, *Bush* and *Delsanto* stated that "[i]n a sexual offense prosecution involving a child victim, the trial court should not admit expert opinion that sexual abuse has *in fact* occurred because, absent physical evidence supporting a diagnosis of sexual abuse, such testimony is an impermissible opinion regarding the victim's credibility." *Delsanto*, 172 N.C. App. at 45, 615 S.E.2d at 872 (quoting *Bush*, 164 N.C. App. at 258, 595 S.E.2d at 718) (emphasis in original). Here, Dr. Moore did not testify that Tina was *in fact* sexually abused, but merely that she exhibited some classic signs of a sexually abused child. Dr. Moore testified, in relevant part:

> [T]he statements and my observation of her testimony today showed me that there—that there is a lot of confusing not in the details so much as just in her emotions. What I—what I noticed was that there were times when she appeared to be trying to hold back emotional display, lips quivering, those kinds of things and you know this is—making this sort of allegation if it is true and facing one's abuser is a very difficult and painful thing to do and sometimes what victims will do is sort of shut off emotions and become rather stoic looking as a defense, psychological defense against having to be in this situation. Just sort of turn it off momentarily and I witnessed that about her behavior on the stand.

Dr. Moore clearly notes in her testimony that she was not testifying that Tina was definitely sexually abused, but uses the language,

STATE v. KHOURI

[214 N.C. App. 389 (2011)]

"this sort of allegation if it is true[,]" to show that these characteristics are typical of a sexually abused child. Dr. Moore's testimony did not go to Tina's credibility and therefore the trial court's allowance of Dr. Moore's testimony did not amount to plain error.

### D.  Objections to testimony of defense witnesses

**[5]**  Defendant's final argument is that the trial court erred in excluding testimony by defense witnesses that Tina had made inconsistent statements about the questioned paternity of the child she aborted, about the identity of her abuser, and about her motivation in accusing defendant. Defendant argues that the State improperly used the Rape Shield Statute to prevent defense witnesses from testifying regarding certain topics, on more than one occasion. We disagree.

Defendant argues that on three occasions the trial court disallowed his line of questioning of defense witnesses based upon the Rape Shield Statute. The so-called "Rape Shield Statute" is codified under N.C. Gen. Stat. § 8C-1, Rule 412 and states, in pertinent part, "the sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior . . . [i]s evidence of specific instances of sexual behavior offered for the purpose of showing that the act or acts charged were not committed by the defendant[.]" N.C. Gen. Stat. § 8C-1, Rules 412(b)(2) (2009). However, the Rape Shield Statute does not preclude questions about prior inconsistent statements. *State v. Younger*, 306 N.C. 692, 697, 295 S.E.2d 453, 456 (1982).

### 1.  Carolyn Khouri's testimony regarding "the great-grandfather"

The first testimony objected to by the State involved an exchange between defense counsel and Carolyn Khouri regarding what happened after several family members had confronted defendant with accusations of abusing Tina when she was about 12 years old. Tina went to stay with another family member for about a week and then returned to defendant's home. The line of questioning continued as follows:

[DEFENSE COUNSEL:] And then did [TINA] return to your [sic] all's home?

[CAROLYN KHOURI:] Uh-hum said she was sorry. She made a mistake. It was the great-grandfather—the other grandfather that molested her and she told. . . [.]

THE STATE: Objection, Your Honor.

THE COURT: Sustained. Strike that. Ladies and gentlemen, don't consider that answer.

It is apparent from the context that the State objected to Ms. Khouri's response because it was unresponsive to the question. An opponent may not object to an answer just because it is unresponsive, but must make a "motion to strike the answer or its objectionable parts." *State v. Beam*, 45 N.C. App. 82, 84, 262 S.E.2d 350, 352 (1980). Even if the answer is objected to, the opponent, generally, must make a motion to strike. *Id.* Here, the trial court immediately sustained the State's objection and had the answer stricken. It appears that the trial court understood the State's objection, that the answer was unresponsive, and merely had the answer stricken before the State could make a motion. Consequently, the answer was correctly stricken as unresponsive and the Rape Shield Statute had no relevance to this ruling.

2. Chip Khouri's testimony regarding his brother's statement

Defendant next alleges that the trial court erred in sustaining an objection concerning Chip Khouri's testimony regarding what Tina said his brother, Tina's father, had told her. The pertinent testimony and trial court's ruling are as follows:

[CHIP KHOURI:] . . . So according to [Tina] my brother said or [Tina] told me that my brother told her to make up these accusations and it would scare my father. . . [.]

THE STATE: Objection, Your Honor.

THE COURT: Sustained. Strike what the brother said.

[DEFENSE COUNSEL:] Now, I'm asking you what [Tina] told you?

[CHIP KHOURI:] That's what [Tina] told me. I'm not sure what the problem and I'm not sure what the problem is . . .

THE COURT: Hold on.

[DEFENSE COUNSEL:] May he testify about those things that [Tina] told him?

THE STATE: No, sir, because he said [Tina] said her father said. Hearsay within hearsay at that point.

[DEFENSE COUNSEL:] No, I think he said. . .

[CHIP KHOURI:] May I reiterate?

THE COURT: No, I'll sustain the objection as to what the father said. He can testify as to what [Tina] said.

[DEFENSE COUNSEL:] But did [Tina] say unequivocally whether these accusations were true or false?

[CHIP KHOURI:] False.

Again, the Rape Shield statute is not implicated in this objection. In context it appears that the State's objection was to an out-of-court statement by Tina's father, to which the State's objection was sustained as hearsay evidence in violation of Rule 802 of the North Carolina Rules of Evidence which did not fall within one of the prescribed exceptions. N.C. Gen. Stat. § 8C-1, Rule 802 (2009); *see* N.C. Gen. Stat. § 8C-1, Rules 801, 803, & 804 (2009). In addition, Chip was permitted to testify as to what Tina told him: that her accusations against defendant were false. Accordingly, this argument is overruled.

3. Carolyn Khouri's testimony regarding "Rory"

Finally, defendant argues that the trial court improperly applied the Rape Shield Statute to another line of questioning of Carolyn Khouri. In relevant part, Ms. Khouri testified regarding when she and defendant learned of Tina's pregnancy:

[CAROLYN KHOURI:] . . . [Tina] was talking about—she was very upset. She had told me that she pregnant [sic]. I got upset. Then—and then [defendant] and I we, talked—we all three talked. She said she wanted to have an abortion. We didn't want her to have an abortion. Then she said she—she was—she says I can do what I want because she was eighteen (18) and I said you know that was true. She could but she told me that she didn't know if it was Rory's . . .

THE STATE: Objection, Your Honor.

[CAROLYN KHOURI:] Well.

THE STATE: Your Honor, I specifically asked the defendant and his attorney to warn any witnesses that they may come forward with and this woman has been warned I know by the defense attorney and at this point . . .

[CAROLYN KHOURI:] Should I say boyfriend?

THE COURT: Hold on.

THE STATE: Your Honor, I ask for it to be stricken.

Following the State's objection based on the Rape Shield Statute, the trial court had the jury leave the courtroom so that the parties could

discuss the issue and ultimately struck Ms. Khouri's answer, as quoted above, in ruling that the Rape Shield Statute prohibited her statement. Defendant did not make any offer of proof as to what Ms. Khouri's answer would have been beyond the testimony quoted above or any explanation of who "Rory" is. Defendant argues that this evidence should have been admitted because it was Rory, not defendant, who impregnated Tina when she was eighteen.

We first note that it is unclear who "Rory" is. This name is mentioned only three times in witness testimony in the trial transcript, here and in defendant's testimony, as discussed below. Defendant's brief implies that "Rory" was Tina's great-grandfather, but that is not apparent from the testimony. This could be based on Ms. Khouri's unresponsive answer, as discussed above that "It was the great-grandfather—the other grandfather that molested her . . . ." Defendant argues that "[i]t was clear from the content of the questions to the defense witnesses, and their partial responses, that they were prepared to testify that [Tina] had named a third candidate as the possible father of the aborted baby, that she had said her great grandfather and not [defendant] abused her, that she had said she was not telling the truth and explained why she accused [defendant]." On the other hand Tina testified that she had a previous boyfriend named Roy Duvell, who lived in Greensboro, which is similar to "Rory[,]" and as noted above, Ms. Khouri in her testimony responded to the State's objection by saying, "Should I say boyfriend?" In any event, defendant reads far too much into Ms. Khouri's answer which was stricken. Without an offer of proof, the most that we can assume for purposes of defendant's argument is that whoever "Rory" may be, he was a "third candidate as the possible father" of Tina's aborted baby.

The Rape Shield Statute does not exclude all evidence of a victim's sexual relations, but it does shield the victim's actual sexual history from being presented to the jury even if such evidence would be relevant. *State v. Thompson,* 139 N.C. App. 299, 309-10, 533 S.E.2d 834, 841-42 (2000).

> The Rape Victim Shield Statute is "nothing more . . . than a codification of this jurisdiction's rule of relevance as that rule specifically applies to the past sexual behavior of rape victims." *State v. Fortney,* 301 N.C. 31, 37, 269 S.E.2d 110, 113 (1980). The exceptions, G.S. 8-58.6(b) (1)-(4), merely "define those times when the prior sexual behavior of the complainant is relevant to issues raised in a rape trial. . . ." *Id.* at 42, 269 S.E.2d at 116.

*State v. Baron*, 58 N.C. App. 150, 153, 292 S.E.2d 741, 743 (1982). We review the trial court's rulings as to relevance with great deference.

> Although the trial court's rulings on relevancy technically are not discretionary and therefore are not reviewed under the abuse of discretion standard applicable to Rule 403, such rulings are given great deference on appeal. Because the trial court is better situated to evaluate whether a particular piece of evidence tends to make the existence of a fact of consequence more or less probable, the appropriate standard of review for a trial court's ruling on relevancy pursuant to Rule 401 is not as deferential as the 'abuse of discretion' standard which applies to rulings made pursuant to Rule 403.

*State v. Tadeja*, 191 N.C. App. 439, 444, 664 S.E.2d 402, 407 (2008) (citation omitted). We believe that the same deferential standard of review should apply to the trial court's determination of admissibility under Rule 412.

Tina had already testified that she was unsure whether her aborted child was fathered by defendant or Bryant. Defense counsel's line of questioning and Carolyn Khouri's answer attempted to show that Tina had sexual relations with a man other than defendant or Bryant. Introducing evidence that Tina had sexual relations with another man would not have shown that the alleged acts were not committed by defendant when evidence of Tina's sexual relations with her boyfriend had already been admitted. Additional evidence would have only unnecessarily humiliated and embarrassed Tina while having little probative value. *See State v. Ginyard*, 122 N.C. App. 25, 31, 468 S.E.2d 525, 529 (1996) (stating that "Rule 412 was promulgated to protect the witness from unnecessary humiliation and embarrassment while shielding the jury from unwanted prejudice that might result from evidence of sexual conduct which has little relevance to the case and has a low probative value." (citation and quotation marks omitted)). Consequently, the trial court did not err in sustaining the State's objection under the Rape Shield Statute.

We also note that defendant cannot show any prejudice from this ruling, as substantially the same evidence was admitted without objection during defendant's testimony. *See State v. Hageman*, 307 N.C. 1, 24, 296 S.E.2d 433, 446 (1982) (stating that "[i]t is well settled in this jurisdiction that no prejudice arises from the erroneous exclusion of evidence when the same or substantially the same testimony is subsequently admitted into evidence."). Defendant testified as follows:

**STATE v. KHOURI**

[214 N.C. App. 389 (2011)]

[THE STATE:] Okay, so you never had any conversation about how the baby very possibly could be yours in your bedroom?

[DEFENDANT:] That it could be mine, no, ma'am.

[THE STATE:] It surprises you?

[DEFENDANT:] It does.

[THE STATE:] Okay, is this the first you've heard about it?

[DEFENDANT:] No, it's not the first. I've heard about it here for the first time but you have to understand she was concerned and when [TINA] is concerned I'm concerned.

[THE STATE:] Okay, so you don't remember her discussing anything about anything that had to do with you? Just about [William Bryant]?

[DEFENDANT:] About Will and Rory but other than that, no, ma'am.

Defendant has shown no prejudice as his own testimony was that Tina told him that Bryant and Rory were the possible fathers of her baby. Therefore, this argument is without merit.

III. Conclusion

Based on the foregoing reasons, we vacate judgment number 09-CRS-290 and otherwise find no error on behalf of the trial court.

VACATED IN PART; NO ERROR IN PART.

Judges CALABRIA and HUNTER, JR., Robert N. concur.