DILLON, Judge.
Defendant Michael James Callaghan was convicted by a jury of statutory rape and statutory sexual offense for conduct he engaged in with Evie[1] , a fifteen-year-old friend of his step-daughter. Defendant appeals from the trial court's judgment entered upon those convictions. Defendant asserts that the trial court improperly excluded certain evidence and that he received ineffective assistance of counsel. After careful review, we conclude that Defendant received a fair trial, free from reversible error.
I. Background
Sometime prior to April 2016, Defendant became acquainted with Evie through his step-daughter. Evie lived near Defendant.
At approximately 7:00 p.m. on 19 April 2016, Evie's mother reported her missing. Police immediately received a tip that Evie was at the home of Defendant.
At approximately 9:30 p.m. that same evening, two officers visited Defendant's home. The officers knocked on Defendant's door but they received no answer, despite hearing muffled noises inside. One officer then walked around to the back of the house. Once behind the house, this officer saw Evie through a window. Evie was standing in a room naked. The officer called to her, but Evie ran. Both officers entered the house and found Evie hiding in a bathroom, still naked and visibly distraught. Evie was intoxicated and covered in baby oil. The officers took Evie into a bedroom and clothed her.
Defendant was indicted for statutory rape of a person age fifteen (15) years or younger and statutory sexual offense with a person aged fifteen (15) years or younger.
Other evidence showed as follows:
Various tests showed Evie had no injuries, and no semen or blood was found on her body. However, Defendant's DNA was discovered on a swab of Evie's vaginal area. Prior to trial, Evie had told a nurse that she had not had sexual intercourse with Defendant on April 19, the night she was found by police. At trial, though, Evie testified that she, in fact, did engage in sexual intercourse with Defendant on April 19, and had done so on other occasions in the preceding months. Defendant and Evie had exchanged romantic and sexually suggestive text messages in the preceding months, as well; and Defendant's personal computer password included Evie's name, birthday, and a term of endearment.
The jury found Defendant guilty of both charges. Defendant timely appealed.
II. Analysis
Defendant makes two arguments: (1) the trial court erred by determining that potentially exculpatory evidence was irrelevant and inadmissible, and (2) that his trial counsel failed to make an objection on viable, constitutional grounds and was therefore ineffective. We address each argument in turn.
A. DNA Evidence and Rule 412
Defendant first argues that the trial court erred by refusing to allow him to introduce certain evidence at trial. Specifically, Defendant sought to introduce evidence that the DNA of another contributor was also discovered on the swab that was taken from Evie's vaginal area. The trial court denied the motion for a lack of relevance and under Rule 412 of the North Carolina Rules of Evidence.
We afford a trial court's decision regarding relevance and the application of Rule 412 great deference, see State v. Khouri , 214 N.C. App. 389, 406, 716 S.E.2d 1, 13 (2011), and overturn only for prejudicial error, see State v. Davis , 237 N.C. App. 481, 489, 767 S.E.2d 565, 570 (2014). "In order to establish prejudice, [D]efendant bears the burden of showing a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." Id. (internal quotation omitted).
Defendant argues that this evidence of the presence of DNA of another shows that Evie's clothing contained DNA from nonsexual contact, which makes it more likely that Defendant's DNA was also present due to nonsexual contact. His purpose was to show that no sexual intercourse with Evie had occurred, to corroborate evidence that he was impotent.
Assuming, arguendo , that exclusion of the evidence of the presence of another contributor's DNA was error, we conclude that it was not prejudicial error. The State presented more than enough other evidence such that it is not reasonably possible that a trial would have resulted in a different verdict or a hung jury had the jury heard this additional evidence: Evie had not informed her mother where she was going on the night in question, and it was getting late. Police discovered Evie naked, intoxicated, and covered in baby oil in Defendant's home. Defendant's computer password was comprised of Evie's name, her birthday, and a term of endearment. Defendant and Evie had shared text messages in which Defendant called Evie a "Princess" and expressed that he wanted to "[s]tart every day making love to [her]." And Evie testified that she had engaged in sexual intercourse with Defendant on the evening in question.
B. Ineffective Assistance of Counsel
Second, Defendant argues that he received ineffective assistance of counsel (IAC) because his trial counsel did not make a motion to suppress alleging that the officer violated the Fourth Amendment by walking around his house and looking inside the window without a warrant. We disagree, as it was unlikely that such a motion would have prevailed.
A claim for ineffective assistance of counsel requires a showing that counsel's performance "fell below an objective standard of reasonableness." State v. Augustine , 359 N.C. 709, 718, 616 S.E.2d 515, 524 (2005) (citation omitted). This standard requires the defendant to show not only that (1) his counsel's performance was deficient, but also that (2) the deficiency was so prejudicial that he or she was deprived of a fair, reliable trial. Strickland v. Washington , 466 U.S. 668, 687 (1984) ; State v. Braswell , 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985). "Thus, both deficient performance and prejudice are required for a successful ineffective assistance of counsel claim." State v. Todd , 369 N.C. 707, 711, 799 S.E.2d 834, 837 (2017).
The Fourth Amendment to the U.S. Constitution, as well as Article 1, Section 20, of the North Carolina Constitution, protects the people against "unlawful searches and seizures" of their "person, houses, papers, and effects." U.S. Const. amend IV ; N.C. Const. art. I, section 20. "It must always be remembered that what the Constitution forbids is not all searches and seizures, but [only] unreasonable searches and seizures." State v. Scott , 343 N.C. 313, 328, 471 S.E.2d 605, 614 (1996) (quoting Elkins v. United States, 364 U.S. 206, 222 (1960) ).
Our Supreme Court has instructed that searches pursuant to the existence of emergencies, known as exigent circumstances, may be reasonable. See State v. Johnson , 310 N.C. 581, 585, 313 S.E.2d 580, 582 (1984). Whether exigent circumstances exist is based on the totality of the circumstances as they would appear to a reasonable officer. State v. Worsley, 336 N.C. 268, 282, 443 S.E.2d 68, 75 (1994) ; State v. Allison, 298 N.C. 135, 141, 257 S.E.2d 417, 421 (1979) (listing the severity of the offense, likelihood the defendant committed the crime, likelihood the suspect is on the premises, likelihood of suspect's escape, and time of day as factors for the existence of an exigent circumstance).
Our Supreme Court has specifically recognized the safety of a missing person as an emergency circumstance for which a warrantless search may be permissible. In State v. Scott , an officer investigated the defendant's home following a missing person report, knocked on the defendant's door and received no response, and then noticed flies that he knew swarmed near corpses. Scott , 343 N.C. at 328, 471 S.E.2d at 614. The officer then performed a warrantless search of the crawlspace under the home and found the missing person's body. Id. Our Supreme Court found the warrantless search to be reasonable under the circumstances through the eyes of a reasonable and cautious officer. Id.
Here, the officers were responding to the report of a missing fifteen-year-old girl and had reason to believe she was at Defendant's residence. The officers received no answer to their knocks, despite hearing noises inside. The officer testified that he walked around Defendant's house because, in his training and experience, suspects often used the back door as an "exit route" when fleeing police investigation. See State v. Guevara , 349 N.C. 243, 250, 506 S.E.2d 711, 716-17 (1998) (stating that "a suspect's fleeing or seeking to escape" could create an exigent circumstance amidst an emergency). Also, Evie (a minor) had been missing for some time and it was almost dark. There was a risk that, if the officers had taken the time to acquire a warrant, Defendant may have escaped or rendered further harm to Evie.
The officer's presence in Defendant's back yard was permissible in light of the exigent circumstances to which he was responding, and therefore did not constitute an unlawful search of Defendant's property. It is unlikely that, had Defendant's trial counsel made a motion to suppress, any evidence concerning Evie's presence or condition in Defendant's house would have been suppressed. The evidence at trial would have been the same, and we cannot say that the probable outcome would have changed. We, therefore, hold that Defendant did not receive ineffective assistance of counsel.
III. Conclusion
We hold that Defendant received a fair trial, free from prejudicial error. Any error occasioned by the trial court's exclusion of certain DNA evidence was not prejudicial, in light of the total evidence before the court. Further, Defendant received effective assistance of counsel as for failing to move to suppress certain evidence, as it was unlikely that he would have prevailed on a motion to suppress.
NO ERROR.
Report per Rule 30(e).
Judges INMAN and COLLINS concur.

A pseudonym.